DETERMINED IN THE

# SUPREME COURT

OF THE

# STATE OF NEVADA,

## OCTOBER TERM, 1869.

---

## THE YELLOW JACKET SILVER MINING COMPANY, RESPONDENT, v. C. C. STEVENSON, APPELLANT.

AGENCY—PRINCIPAL NOT BOUND BY AGENT'S UNAUTHORIZED ACTS. A principal is only bound by such acts of his agent as are within the scope of the agent's authority.

AGENCY—RATIFICATION. A principal is only held to ratify an unauthorized act of an agent when he does so expressly; or with full knowledge of the transaction accepts or receives some advantage from it; or when, within a reasonable time after such knowledge, he fails to repudiate it.

RATIFICATION OF AGENT'S UNAUTHORIZED ACTS—FULL KNOWLEDGE. Though a principal receive advantage from an unauthorized act of an agent, he will not be held to ratify it unless he accept the advantage with full knowledge of all the material facts of the transaction.

CORPORATIONS—UNAUTHORIZED LEASE BY PRESIDENT—PRESUMPTIONS OF RATIFICATION. Where the President of a mining corporation leased, in the name of the company but without its authority, certain of its mining ground, and the money paid as rent was returned as "money received for ores sold:" *Held*, that the mere fact of the receipt of the money, without proof of knowledge of the lease on the part of the company, was not sufficient proof from which to infer a ratification of the lease, nor a sufficient showing from which to infer the relation of landlord and tenant so as to entitle the occupant of the ground to notice to quit.

The Yellow Jacket Silver Mining Company *v.* Stevenson.

CORPORATIONS NOT CHARGEABLE WITH KNOWLEDGE OF INDIVIDUAL TRUSTEES. On a question as to the ratification by a corporation of the unauthorized act of its President, where it is necessary to show knowledge on the part of the corporation, it is not enough to show an individual knowledge on the part of the minority of the Board of Trustees, even if a knowledge on the part of all of them in their individual capacity, and not acting as a Board, would be sufficient.

ENTRY UNDER VOID LEASE—TENANCY AT WILL. The rule that a tenancy at will is created where a tenant enters upon property under a void lease, and as such tenant at will is entitled to notice to quit, does not apply to a case of entry under a lease made by a pretended agent acting entirely without authority from the owners.

APPEAL from the District Court of the First Judicial District, Storey County.

The complaint charges the defendant with having unlawfully entered into, and unlawfully continuing and threatening to continue in, the possession of a portion of the Comstock Ledge in the Gold Hill Mining District in Storey County, known as the West or Red Ledge, and with extracting therefrom, removing, and appropriating to his own use, and threatening to continue to extract, remove, and appropriate, thirty tons per day of metalliferous quartz rock and earth, worth eighteen dollars per ton. After the argument of an order to show cause, an injunction was granted against defendant, to be and remain in force during the pendency of the action, and until the further order of the Court, from which order of injunction this appeal was taken.

*Williams & Bixler*, for Appellant.

I. The Board of Trustees ratified the lease made by Winters by accepting the " rent " from appellant. They knew he was at work upon and occupying a part of their mine, and that they were receiving " rent " for its use. It was their duty to have ascertained from their President the terms of the occupation, and the law will presume they did so.

II. The occupation of a mine paying a fixed sum for use becomes à lease. (*United States* v. *Gratiot*, 14 Pet. 526, 538–9; *Harlen* v. *The Lehigh Coal Co.*, 35 Penn. 287 and 292; *Tiley* v. *Moyers*, 43 Penn. 404 and 410; *Cross* v. *Tome*, 14 Md. 217.)

III. The acceptance of rent from one occupying land, houses, or mines, claiming to occupy as lessee, makes him a tenant of the property, and as such tenant he cannot be ejected without notice to quit, which notice must be given six months before the intended termination of the "term." (1 Washb. on Real Prop. 396, and Note 3; 1 Washb. on Real Prop. 393; Adams on Ejectment, 106, 108, 111, and 112; 1 Cowen's Treat. 303; 14 Allen, Mass. 45; 23 Wend. 616 and 618; Taylor's Landlord and Tenant, 35; *Frisbie* v. *Price,* 27 Cal. 255; *Murray* v. *Armstrong,* 11 Mo. 209; *Ridgley* v. *Stillwell,* 28 Mo. 400; *Searlly* v. *Murray,* 34 Mo. 420; *Squires* v. *Huff,* 3 A. K. Marsh. 943; *Fogle* v. *Chany,* 12 B. Mon. 139; *Sullivan* v. *Enders,* 3 Dana, 66; *Denn* v. *Drake,* 2 Green, N. J. 523; *Denn* v. *Blair,* 3 Green, N. J. 181; *Doe* v. *Richards,* 4 Ind. 374; *Jackson* v. *Hughes,* 1 Blackford, 421–2; Bouvier's Dict. 15 and 16, word "Lease;" Bouvier's Dict. 446, word "Rent.")

IV. But if the lease was void for want of authority to make it, or as not having been ratified, then the acceptance of "rent" made appellant tenant at will, or from year to year, with right of notice to quit. It must be borne in mind in determining whether the money paid to respondent was "rent money" that appellant so paid it, understanding and holding himself out as the tenant of respondent; and respondent introduced no evidence showing or tending to show that it was received for any other purpose or upon any other contract. We were therefore tenants of some sort; and if the written lease was not valid, we were nevertheless entitled to reasonable notice to quit before suit could be brought. As we had no notice whatever, the action was prematurely brought, and the injunction improperly issued.

*C. J. Hillyer,* for Respondent.

I. There was no valid written agreement. The pretended lease was not one which the President could make by virtue of his official position. (Angell & Ames on Corp., Sec. 297; *Blair* v. *B. R. Co.,* 20 Cal. 602; *Fulton Bank* v. *N. Y. & S. C. Co.,* 4 Paige's Ch. 132; *Hoyt* v. *Thompson,* 1 Seld. 322; 7 Conn. 219; 12 N. H. 205; 20 Vt. 446.)

II.   There was no ratification.   Ratification to be valid must be made with full knowledge.   The proof shows that there was no knowledge on the part of any Trustee, except the officer making it, either of the written agreement, or of any agreement, allowing Stevenson either any definite amount of ground or a privilege for any length of time.   Every act done by the Board in the reception of money, the approval of accounts, etc., was entirely consistent with the non-existence of any agreement, and therefore no assent to its terms can be implied, and no obligation of inquiry in relation to it was imposed.   (Angell & Ames on Corp., Sec. 304 ; Paley on Agency, 171 ; Story on Agency, Secs. 239, 242–3 ; 6 Cushing, 409 ; 26 Wis. 102 ; 22 Pick. 31 ; 9 Ban. [Penn.] 27 ; 30 Barb. 575 ; 8 Gill & John. 248.)

III.   The written agreement being void as a contract, it cannot be considered in the case for any purpose.   It is not like the case of a lease made by one having authority, but void for want of form. There, if a tenancy is created by a delivery of possession, and the acceptance of rent, the paper may be sometimes resorted to, to ascertain the terms of the tenancy.   The reason is that the proper authority has created the tenancy by its acts, and that the same authority has assented to and fixed its conditions by a paper expressing them correctly, but void for want of form.   Here the proper authority has never seen or known of the writing, and could not have assented to any of its terms.   The paper is, therefore, as to the company, as if it had never been written, and the rights of the parties must be determined by the other facts appearing in proof.

IV.   The relation of landlord and tenant never existed between plaintiff and defendant.   The only authority having the power to place him in possession was the Board of Trustees, deriving their power from the statute.   If the defendant desired to show that this power was vested in any other officer, it was incumbent upon him to prove that this act was within the recognized sphere of duty of such officer.   In the absence of proof the Court cannot present it ; and if it could, it would be a forced and unnatural presumption that an inferior officer should have the power to dispose of the possession of the whole or any part of the mining claim of a corporation.

The relation of landlord and tenant can only be created by con-

tract.    The contract can only be implied from acts which from their inconsistency with any other probable supposition compel or persuade to the conclusion that the parties consented to the relation, and that it was their intention that it should exist.    (Taylor's Landlord and Tenant, Secs. 24 and 25 ; 15 Wend..379 ; 1 Hill, 234 ; 5 Bing. 694 ; 7 Scott, 855.)

V.    In the absence of the relation of landlord and tenant, there is no basis for what is termed the equitable right to continue to take out ore for a reasonable time.    He was either a trespasser to be stopped at any time by the Court, or if within the scope of his duty the Superintendent permitted him to take out ore, it was equally within the scope of his duty when he told him to stop.

By the Court, Lewis, C. J. :

In the month of January, A.D. 1868, John B. Winters, the President of the Yellow Jacket Mining Company, executed in the name of the respondent an instrument whereby the appellant was given the privilege of entering upon a certain designated portion of respondent's mining ground, with the privilege of mining and appropriating to his own use all mineral-bearing rock which might be found therein, for the sum of two dollars per ton for all ore so mined and taken by him.    Under this instrument, which by its terms was to continue during his pleasure, the appellant entered upon, mined, and extracted a large quantity of ore, and was so engaged when this suit was instituted for the purpose of enjoining him from further entering upon, mining, or taking ores.    The proceeding is founded upon the assumption that Winters was not authorized to execute the instrument or lease referred to on behalf of the company, and hence it is not holden upon or bound by it.

The evidence undoubtedly sustained this position.    Winters, himself, testified that he had no authority to execute such an instrument on behalf of the company, or to lease any portion of the mine, and the by-laws introduced show that such power is vested only in the Board of Trustees, which it is admitted never delegated it to him.    Not possessing the authority to act for the company in the execution of such instrument, it could not be bound by it ; for it is

an axiom of the law of agency that the principal is only bound by such acts of the agent as are within the scope of his authority. But it is argued for appellant, that a corporation, like a natural person, may ratify an unauthorized act of its agent; and in this case the respondent ratified the instrument executed by Winters. That it might have been adopted or ratified by the company and thereby become its own act, and binding upon it, there is no doubt; that it was done however in this case is not established to our satisfaction. A principal is only held to ratify the unauthorized act of an agent when he does so expressly, or, with full knowledge of the transaction, accepts or receives some advantage from it, or when within a reasonable time after such knowledge he fails to repudiate it.

Although the principal received advantage from such act he will not be held to ratify it, unless he accept it with full knowledge of all the material facts of the transaction.

"No doctrine," say the Supreme Court of the United States, "is better settled, both upon principle and authority, than this, that the ratification of an act of an agent previously unauthorized must, in order to bind the principal, be with a full knowledge of all the material facts. If the material facts be either suppressed or unknown the ratification is treated as invalid because founded in mistake or fraud." (*Owings* v. *Hull*, 9 Pet. 629.) So where it is sought to charge a corporation with the ratification of an unauthorized act of an agent by reason of its acceptance of some benefit or advantage from it, it should appear that such benefit was accepted with full knowledge of the character of the act. (Angell and Ames on Corp., § 304.)

The evidence in this case, however, is clear and positive that the Board of Trustees which was the authorized agent of the corporation knew nothing of the terms, nor even of the existence of the lease in question. The money paid by the appellant was reported by the Superintendent to the Board as received for ores sold. Nothing seems ever to have appeared in his reports from which it could even have been inferred that the money paid by, or due from, Stevenson to the company was for the use or rental of any portion of the mine. How then can it be held that the acceptance of money by the Board reported to it as being for ores sold was a ratification

of the lease executed to the appellant ? The company did not know of such lease, nor were there any such circumstances connected with the acceptance of the money as to place it upon inquiry, or to charge it with presumptive notice of its existence.

If, then, it be the law that there must be a full knowledge of all the material facts before the acceptance of profit or advantage by the principal will be held to constitute a ratification, surely the respondent here cannot be held upon the lease in question, for it knew nothing of the material facts respecting it. If it were shown that the Board knew of the lease, the acceptance of payment from Stevenson for the ore extracted would doubtless be sufficient to establish a ratification; but the contrary being shown, it would manifestly be opposed to the well-settled rules of law to hold such acceptance to be a ratification.

But it is further claimed that if the lease were void and there were no ratification, still the acceptance of rent from Stevenson constituted him a tenant at will of that portion of the mine from which he was extracting ore, and therefore entitled him to notice to quit, which was not given. The fallacy of this argument is, that it assumes the corporation accepted the payment made by Stevenson *as rent*, when nothing of the kind is shown. True, the money was paid, but as stated before, it was reported to the Board as money received for ore sold, and not as rent for the use or occupation of any portion of the mine. It is not shown that the Board of Trustees had any knowledge that he had such use or occupation. The acceptance of money as rent, knowing it to be such, would undoubtedly create the relation of landlord and tenant as completely as an express contract, because the payment by the tenant would be a direct recognition and acknowledgment of the landlord's title, and the acceptance by the latter of such payment knowing it to be paid as rent, would be as perfect a recognition of the tenant's right to occupy as an express assent or permission; consequently it has been held, and very justly too, that the acceptance of rent, knowing it to be paid as such, creates the relation of landlord and tenant.

But the acceptance of money by the owner of land—not knowing it to be paid as rent, or believing it to be paid for something else—cannot be held an assent to the use or occupation, nor create

such relation. (*Doe* v. *Crago*, 6 Manning, G & S. 90.) Not knowing of such occupation, an assent to it could not, with any degree of consistency, be presumed to be given. Here, there is no evidence that the Board of Trustees, as such, knew of Stevenson's occupation; and the acceptance of the money, paid by him, could not raise a presumption of such knowledge: because it was returned as for ores sold, and as such it appears to have been accepted by the company. Were it returned as rent and so accepted, a tenancy would be created—for that fact alone would be a sufficient notification to the company that Stevenson was occupying a portion of the mine, and the acceptance of the rent would be a sufficient assent to such occupancy. But the law does not force contracts upon persons by presumptions unnatural or improbable. Legal presumptions are natural and rational inferences drawn from known or admitted facts. As for example : if one accepts *rent* from another in possession of his property, knowing it to be paid as rent, the natural presumption is that he assents to the possession—and such is the presumption of the law ; but it would not be rational or natural to infer an assent to such possession if the money were accepted, the owner not knowing it was paid as rent; nor do we think the law raises it in such a case.

Perhaps, if it were shown that money was paid by one occupying premises, as rent, and that it was accepted by the owner, with nothing further appearing, it might be presumed that the owner knew it to be intended as rent, and so accepted it; but where, as in this case, it is shown, in connection with the proof of payment, that it was reported to be for something other than rent, and so received, such presumption cannot be indulged.

It cannot, we think, be maintained that the knowledge obtained unofficially by three of the trustees, that Stevenson was engaged in extracting ore from the mine, is sufficient to charge the company with such knowledge. As any number of trustees, acting individually and not as a Board, cannot act for the corporation—so, any information obtained by individual trustees and not communicated to the Board, should not, it would seem, become the foundation of a contract binding upon the company. The trustees represent the corporation, only when assembled together and acting as a Board.

(Laws 1864–5, 360, Secs. 5 and 7.    See also, *Gashwiler* v. *Willis*, 33 Cal. 11.)    Such being the law, how can it be claimed that information communicated to them individually, but not to the Board, can be made the foundation of an implied contract on the part of the corporation?    But, however this may be, it cannot possibly be maintained that a corporation can be charged with acting upon, or recognizing a fact, which is known only to a minority of its trustees.    As it requires a concurrent action of a majority to execute an express contract on its behalf, the. action of, or information communicated to, any number less than a majority, cannot become the basis of a contract binding upon the company.    In this case the three trustees, who knew that Stevenson was extracting ore from the mine, might be deemed to assent to it—still, unless they constitute a majority of the members of the Board, their action or implied assent could no more bind the corporation than an express contract entered into by any one of them alone could.    The record here does not show that three were a majority of the Board of Trustees of the plaintiff—a fact necessary to be shown by the defendant, before he could claim the corporation to be bound by their act, or be chargeable with information obtained by them.    So, even if it were admitted that the act of a majority of the trustees, not acting as a Board, could bind the corporation, still, as it is not shown in this case, that a majority did so act, or have knowledge of Stevenson's possession, the result here would be unchanged.

The authorities referred to in support of the proposition, that one entering under a void lease is to be deemed a tenant at will, and so entitled to notice to quit, have no pertinency to the facts of this case.    When an owner allows one to enter upon his property, under a lease rendered void by reason of some informality, undoubtedly a tenancy at will may thereby be created—because, although the lease intended to be executed be nugatory, still the entry and taking of possession are by the permission of the owner; and in such case the tenancy is created by the acts of the respective parties, irrespective of the lease attempted to be executed.    The case is, however, very different where there is not only a void lease, but the entry upon the premises is also unauthorized.    As for example: if a stranger to the owner should, on his behalf and in his name, make

a lease of his property, and the lessee should enter into possession under it, he could certainly not be held a tenant at will, and entitled to notice to quit from the owner.  But the President of the plaintiff had no more authority to lease any portion of its mine than if he were an entire stranger.  Not having the authority to lease, it follows he had no authority to place any person in possession of the mine, or any portion of it, *as a tenant*—for such possession can only be derived from one having the right or authority to lease— hence, not only was the lease executed by Winters void, but any possession given to, or right of tenancy attempted to be conferred upon, Stevenson, by him, was entirely unwarranted.  There could, therefore, be no tenancy at will created by means of the possession so obtained.  If Winters had the authority to lease and did so, placing the defendant in possession, and the lease, by reason of some informality, proved to be void, doubtless, Stevenson would in such case be held a tenant at will: but Winters having no such authority, Stevenson could acquire none of the rights of tenancy from him—for as an agent, Winters could no more bind his principal by giving a possession which would create a tenancy, than by executing a written lease of the premises.

The appellant having failed to establish the relation of landlord and tenant between himself and the respondent, and this being the only ground relied on, the order of the lower Court against him must be affirmed.