Hillyer *v*. The Overman Silver Mining Co.

CURTIS J. HILLYER *et al.*, Respondents, *v*. THE OVER-
MAN SILVER MINING COMPANY, Appellant.

Contracts of Corporations—Unauthorized Statements of Officers.   Officers
of a corporation, who cannot bind the company in a contract by directly ex-
ecuting it on its behalf, cannot impose any such liability upon it by stating
or persuading a person that the company itself had done so, when in fact it
had not.

Evidence of Contract—Direct Proof as Opposed to Presumption.   Where an
attorney proposed to do the legal business of a Mining Company for a certain
period at a certain rate per month, the mere fact that his bills at that rate for
several months had been allowed and paid, though sufficient to raise a pre-
sumption of the acceptance of his proposition, would not overbear direct
evidence that the proposition was not submitted to or acted upon by the
company, and consequently never accepted.

Contracts—Meeting of Minds.   There can be no valid executory contract un-
less there be a meeting of the minds of the respective parties upon its terms
and conditions; they must assent to the same thing in the same sense.

Corporation Trustees can only act as a Board.   The trustees of a corporation
can only bind it when they are together as a Board, acting as such.

Appeal from the District Court of the First Judicial District,
Storey County.

This action was commenced October 12th, 1869, by C. J. Hillyer,
W. S. Wood and W. E. F. Deal, composing the law firm of
Hillyer, Wood & Deal, against the defendant, a corporation organ-
ized under the laws of California, but engaged in the business
of mining in Storey County.   It appears that the law firm of
Hillyer & Whitman had been employed by the defendant as its
attorneys for the year 1868, at the rate of $250 per month.   On
being notified near the end of that year that the contract was about
to run out, the company declined to make any change.   In No-
vember, 1868, Hillyer & Whitman dissolved, after which Mr.
Hillyer continued to act as defendant's attorney.   At the beginning
of 1869, the new firm of Hillyer, Wood & Deal was formed, and
soon afterwards the proposition referred to in the opinion was
handed by it to the defendant's superintendent.   In July, 1869, a
new board of trustees assumed office, and among other things,
changed the attorneys of the company.

In addition to the points of counsel noted below, the interesting question as to whether a board of trustees can employ an attorney for a period to extend beyond the term of its own existence was discussed at some length; but as the Court did not pass upon it, the heads of argument upon that subject are omitted.

*Williams & Bixler*, for Appellant.

I.   Plaintiffs do not pretend to the right of recovery for services rendered, as none were performed during the months of July and August, for which time they claim the salary mentioned in their complaint.

II.   No such contract as is alleged was ever made.   None was made with McCullough, the superintendent, nor was any made with the board of trustees.   All McCullough pretended to do in relation to it was to transmit plaintiffs' proposal to contract to the office in San Francisco, and verbally communicate to them the answer which he had received.   Afterwards, in execution of a supposed contract, he paid plaintiffs $250 per month.   McCullough did not pretend or attempt to contract with plaintiffs; on the contrary, his whole action shows a disavowal of any such intention.   He simply said: " If you will make a proposition, I will send it to the office in San Francisco for action there," and afterwards said : " I am informed that your proposition has been accepted."

No contract was made with the board of trustees, because they never knew of the proposition and consequently could not have acted upon it; and the only fact which can be claimed to have ever come to their knowledge was, that McCullough, their superintendent, paid at the end of each month, out of the company's funds, the sum of $250 to plaintiffs for professional services rendered during the preceding month.   This, notwithstanding the fact that the receipt to McCullough stated that the money was for services as per contract, did not, we submit, constitute a contract to retain plaintiffs as counsel for one year, and to pay them $3,000.

III.   The main features of this case are very similar to those of *The Yellow Jacket Co.* v. *Stevenson*, 5 Nev. 224.   There the president, being also a trustee and superintendent, actually made

the contract in writing and signed it for the company, so there was an unauthorized contract to ratify; but the Court held the company not liable. In that case the contract was in the company's vault, which fact was known to the president and secretary; in this, only a proposition to contract was in the company's safe, which was known to the president and secretary. In that case, four of the seven trustees knew that Stevenson was acting upon some sort of a contract; in this, only one knew that the proposition to contract had been made. In that case, the board knew that money was received for ores without knowing the particulars, and approved the action of the superintendent in receiving it; in this, the board knew money had been paid for legal services without knowing the particulars; and in that case, the other party had been led by the action of the president in contracting with him, to invest money and labor in the venture, while in this the other party have invested neither.

IV. The company could only contract through its board .of trustees or an authorized agent, except in case an authorized agent assumed to act, and that act was afterwards ratified by the board of trustees by direct action, or by non-action, within reasonable time after full knowledge of the facts. A board, as such, can only act when assembled and organized as such. (Angell & Ames on Corporations, Secs. 297–8; *Blen* v. *Bear River Co.,* 20 Cal. 602; *Fulton Bank* v. *N. Y. & S. C. Co.,* 4 Paige, 132; *Haight* v. *Thompson,* 1 Seld. 322; 7 Conn. 219; 12 N. H. 205, and 20 Vt. 446.)

V. To recover at all, it devolved on plaintiffs to show a legal contract, which they failed to do. (15 Barb. 324; *Finley* v. *Bristol,* 9 Eng. Law & Eq. 483; *Pixley* v. *W. P. R. R. Co.,* 33 Cal. 196.)

*Hillyer, Wood & Deal,* for Respondents.

I. The defendant must be held to have had official notice of plaintiffs' proposition, because it was sent to the president, through whom the superintendent communicated with the board. The proposition was received by the president, and remained in the

keeping of the officer of the company whose business it was to keep such papers. Defendant ratified the contract by its silence, after being informed as to its terms. It had notice at the end of every month up to the fifth of July, 1869, that two hundred and fifty dollars per month was being paid plaintiffs upon a contract, the terms of which were known to it. The superintendent, in the usual course of his business, sent these vouchers to the office at San Francisco, and they were allowed by defendant. The plaintiffs were not informed of any desire to recede from this contract until July 10th, 1869, after the election of the new board. Between January and July, both the president and secretary personally consulted with plaintiffs in regard to the pending cases which they had been attending to. It follows that the contract was ratified by defendant. (12 Metcalf, 343; 16 Wisconsin, 120; 5 Cushing, 179; 1 Black. 539; 6 McLean C. C. R. 109; 15 Barb. 324.)

II. A corporation acting through an agent is held to the same liability as an individual. If it allows its agent to transact certain business, and by its silence leads those dealing with it to believe he acts under authority, it is bound by the acts of such agent just as any other principal would be by the acts of his agent. The acts of defendant are inconsistent with any other supposition than that it fully knew of the contract. In such a case, the presumption of a ratification is conclusive. (Story on Agency, Sec. 253; *Bank of the U. S.* v. *Dandridge*, 12 Wheaton, 70.)

III. The question of ratification being a question of fact, if there is a conflict in the testimony, this Court will sustain the finding of the Court below.

IV. In *The Yellow Jacket Co.* v. *Stevenson*, 5 Nev. 320, the one thing essential to support a contract was lacking. The board had no knowledge whatever that Stevenson was holding under a lease. The money paid by him to the Yellow Jacket Company was returned as for ore sold. If it had been shown that during the time Stevenson held a portion of the mine, accounts had been brought before the board at the end of every month, showing so much money paid by him as rent, and that such accounts had been examined and passed upon by the board, the

Court would have been warranted in holding that the relation of landlord and tenant existed between him and the company.

V.  The contract was an executed contract.  Nothing remained to be done by defendant to render it binding upon plaintiffs.

By the Court, LEWIS, C. J.:

A judgment was recovered by the plaintiffs in this case against the Overman Silver Mining Company for the sum of five hundred dollars, upon a contract claimed to have been entered into between themselves and the defendant, by the terms of which the Company agreed to pay them a salary of two hundred and fifty dollars a month, during the year 1869, for transacting and attending to its legal business.  This salary was regularly paid up to the month of July, at which time the defendant refused to make any further payment, claiming that it had entered into no such contract with plaintiffs as claimed by them.  The only question now in the case is, whether any agreement to continue for the term of a year was in fact executed by the defendant.  The Court below found there was, and thereupon rendered the judgment from which this appeal is taken, but we find the evidence does not warrant such a result. It appears that at the request of the defendant's superintendent the plaintiffs, in the month of December, A.D. 1868, submitted a written proposition to the defendant, whereby they agreed to transact and attend to all the legal business in which the defendant might be interested in the State of Nevada during the year 1869, for the sum of two hundred and fifty dollars per month.  It is not claimed by the superintendent, nor does it appear to have been the understanding of plaintiffs, that that officer had the authority to execute a contract of that kind on behalf of the defendant.  Neither was there any attempt on his part to do so.  The evidence shows that he asked plaintiffs to make a proposition so that he might submit it to the company, and not with a view to acting upon it himself. The proposition was given to the superintendent, who sent it to the president or secretary at San Francisco.

As the superintendent did not pretend to execute the contract, or employ plaintiffs, it is necessary only to determine whether the

board of trustees, who alone were the ·authorized agents of the company to represent it in the making of such contract, executed it. It is not claimed that any contract was made, except by the acceptance of the proposition submitted by plaintiffs. Was it accepted by the board of trustees? We think it is not proven that it was, but the converse rather is established by the defendant. The secretary of the company, whose duty it was to be present at the meeting of the board, and to keep minutes of its proceedings, testifies that the proposition of plaintiffs was never brought before the board, or acted on by it. Several of the officers undoubtedly knew of the proposition, and may have led plaintiffs to believe, by conversations and otherwise, that their proposition had been accepted; but these officers, who could not bind the company in a contract of this kind by directly executing it on its behalf, certainly could not impose any such liability upon it by simply persuading a person that the corporation itself had done so, when in fact it had not. As the case is presented here, neither the president, superintendent, nor both, had the power to execute the contract sued on. That authority is by law vested in the board of trustees, and it is not claimed that it had been delegated to those officers, or that they had been authorized by the board to act for them.

It is shown by plaintiffs that bills were presented to the board for the salary, claimed by them, and that they were allowed, and, indeed, paid. This evidence would doubtless raise the presumption that the plaintiffs' proposition had been accepted by it, and was sufficient to justify that conclusion, were it not overborne by direct evidence that such was not the case. Here it is affirmatively shown that the proposition was not submitted to or acted on by the board, and thus the presumption which might otherwise arise from its action allowing the bills is entirely destroyed. Why the claims were allowed and the money ordered paid to plaintiffs, is a question not necessary to be inquired into. It is sufficient here that they did not accept the proposition.

There can be no valid executory contract unless there be a meeting of the minds of the respective parties upon its terms and conditions. "There is no contract," says Parsons, "unless the parties thereto assent, and they must assent to the same thing in the same

sense." (1 Parsons on Contracts, 399.)   Can it be said that the
board of trustees of the Overman Company assented to the terms
proposed by the plaintiffs in their proposition, when it is sworn the
proposition was never brought before it, or in any way acted upon
by it, and indeed the board did not know of its existence, as appears
to be the case ?   The trustees can only bind the corporation under
our law when they are together as a board, acting as such. (See *The
Yellow Jacket Company* v. *Stevenson*, 5 Nev. 224.)   The plaint-
iffs' proposition not having been brought to the knowledge of the
board, it cannot be presumed it knew anything of it, and conse-
quently cannot be held to have accepted it.   The burden of estab-
lishing the contract was upon the plaintiffs; having failed to do this,
the judgment must be reversed.