[No. 715.]

## THE STATE OF NEVADA EX REL. WILLIAM H. SEARS, RELATOR, *v.* W. T. WRIGHT ET AL., CONSTITUTING THE BOARD OF TRUSTEES OF THE ALLEN COMPANY, RESPONDENTS.

MANDAMUS—HOW SERVED.—The service of the alternative writ of mandamus upon the president of a corporation: *Held,* sufficient in this case. The better practice is to serve each individual trustee.

DEMAND FOR ANNUAL ELECTION OF TRUSTEES—UPON WHOM SERVED.—It is not necessary that a demand for an annual election of trustees should be made upon the board of trustees when in session; a demand upon each individual trustee of the corporation is sufficient.

MANDAMUS—HOW DIRECTED.—A mandamus directed against the individual trustees constituting the board of trustees of a corporation is virtually the same as if directed against the board of trustees, and is sufficient.

VERIFICATION TO PETITION FOR MANDAMUS.—The verification to a petition for mandamus in the form of a jurat to ordinary affidavits is sufficient.

INTERVENTION IN MANDAMUS.—To entitle a party to intervene in proceedings for a writ of mandamus, it must be shown that the applicant would either gain or lose by the direct legal operation or effect of any decision that might be rendered.

MANDAMUS—INTEREST OF RELATOR.—Before relator can obtain the writ of mandamus, he must establish sufficient facts to show that he has a legal right to have something done by respondents which they have refused to do.

IDEM.—The relator should not be compelled in an application for mandamus to contest his rights against third persons; the investigation should be limited to such facts as are necessary to determine the rights of the parties properly before the court.

IDEM—MINING STOCK.—Where relator asks that an annual election of trustees shall be held as provided by law, and comes into court the apparent owner of the stock in his possession, and the respondents admit that he paid the assessment thereon as levied by them, and that at his request they issued to him the identical stock presented in court, he has

shown such an interest in the stock against respondents as entitles him to the writ of mandamus.

ANNUAL ELECTION OF TRUSTEES—RIGHTS OF STOCKHOLDERS.—The legal right to have an annual election of trustees of a corporation as required by law (Stat. 1875, 68) belongs to any stockholder, independent of the number of shares of stock owned by him.

*Beatty, J., dissenting:*

MANDAMUS—WHEN PROPER REMEDY.—The mere fact that an action or proceeding will lie does not necessarily supersede the remedy by mandamus. The relator must not only have a specific, adequate and legal remedy, but it must be one competent to afford relief upon the very subject-matter of his application.

THIS was an original application to the Supreme Court for a writ of mandamus to compel respondents, W. T. Wright, John Skae, L. Reynolds and Dennis Driscoll, as trustees of the Allen Company, a corporation formed and existing under the laws of the State of Nevada, to forthwith call a meeting of the stockholders of said corporation, for the purpose of holding an annual election of a board of trustees. The form of the jurat to the petition was "subscribed and sworn to before me, this 15th day of May, A. D. 1875. Chas. F. Bicknell, Clerk." This was the only affidavit annexed to the petition.

The other facts are stated in the opinion.

*De Long & Belknap and William H. Sears,* for Relator.

*Whitman & Wood,* for Respondents.

By the Court, HAWLEY, C. J.:

Relator in his petition alleges: that the Allen Company is a corporation; that its capital stock is divided into one thousand eight hundred and fifty shares; that relator is the owner and in the actual possession of one thousand eight hundred and seventeen shares; that the business and affairs of the Allen Company is managed and controlled by respondents as trustees; "that there has been no election of a board of trustees or other officers, by the stockholders of said corporation, for over three years last past, nor has there been any stockholders' meeting of said corporation called for such purpose; but said trustees, in defiance of the rights of

the stockholders and in violation of law and the by-laws of said corporation, have refused, and still continue to refuse to call any meeting of stockholders for the purpose of electing trustees;" that respondents, in February last, levied an assessment upon the capital stock of said corporation of five dollars per share; that on May 10, relator then being the owner and holder thereof, presented to respondents certificates of the capital stock of said corporation, representing one thousand eight hundred and seventeen shares; that relator then paid, and the respondents accepted and received, nine thousand one hundred and fifteen dollars for the assessment and costs of advertising the same; that respondents at the same time accepted and received said one thousand eight hundred and seventeen shares and cancelled the same, and issued and delivered to relator certificates of stock of said corporation in lieu thereof, representing one thousand eight hundred and seventeen shares in the name of relator, "which said certificates relator now holds, owns and possesses;" that there has been no election, annual or otherwise, of a board of trustees of said corporation, called or held within three years last past; that relator, on May 14, served upon each of respondents a notice demanding that they should call a meeting of the stockholders for the purpose of electing a new board of trustees, and that respondents have refused to comply with such demand.

Upon presenting his petition, relator obtained an alternative writ, which was served upon "W. T. Wright, the president of the board of trustees of the Allen Company."

1. Respondents Driscoll, Skae and Reynolds, specially appear and move to quash the writ.

While we think the better practice would be to serve each individual trustee, yet we do not think that under the provisions of the statute it is absolutely necessary so to do. The proceedings are instituted not against respondents as individuals, but in their representative capacity as trustees. It is virtually the same as if commenced directly against the board of trustees. The service, therefore, upon the president must, in the present case, be held sufficient.

2. Respondent Wright interposes a demurrer and claims: "That the writ doth not state facts sufficient to constitute a cause of action or proceeding against him." His counsel argue that the demand for an annual election should have been made upon the board of trustees when in session, and rely upon the principles announced in *The Yellow Jacket S. M. Co.* v. *Stevenson,* 5 Nev. 224, and *Hillyer et al.* v. *The Overman S. M. Co.*, 6 Nev. 51, to support this position. It is claimed that these cases virtually overrule the case of *The State ex rel. Flagg* v. *The Board of Trustees of the Lady Bryan M. Co.*, 4 Nev. 400, wherein a similar demand to the one made in this case was held sufficient. We fail to find any conflict in the reasoning of the respective opinions. In our judgment, there is nothing in either inconsistent with the views expressed in the others. In the cases cited by counsel, contracts had been made and knowledge obtained by individual trustees, acting in an individual capacity, and it was sought thereby to bind the corporation, and the court held that the trustees acting individually, and not as a board, could not act for the corporation; that "the trustees represent the corporation only when assembled together and acting as a board."

In the present case, as in *Flagg* v. *Lady Bryan,* relator is demanding that the trustees shall do an act which the law especially enjoins upon them as a duty pertaining to their office.

It has been held that in the case of public officers who have failed to perform such duties, it is not necessary to make any demand. (*Humboldt County* v. *The County Commissioners of Churchill County,* 6 Nev. 39; *Mottu et al.* v. *Primrose,* 23 Md. 501; *Commonwealth ex rel. Middleton* v. *Commissioners of Alleghany Co.*, 37 Penn. St. 246.) If a demand is necessary, and we proceed upon the theory that in cases like the present it is, we do not think relator was bound to wait until he caught the board in session to serve his notice.

In the case of *Flagg* v. *Lady Bryan,* the trustees had not adopted any by-law prescribing the manner in which an an-

nual election should be held, and it was claimed that in the absence of such a by-law the time of calling such an election was in the discretion of the trustees. The court held that it was the duty of the trustees to call the annual election, and they could not avail themselves of the failure to adopt a by-law "as a reason why they should not do another act which the law imposes upon them as a duty." So, here, it was the duty of the trustees to meet as a board and call the annual election. They cannot excuse themselves for not complying with the law, by showing that they have neglected some other duty, or failed to perform an act which should properly precede the one sought to be enforced.

If respondents' position is correct, how could relator ever obtain relief? He must first proceed to obtain a writ to compel the trustees to hold a meeting of the board, and while it is in session he must make his demand for an annual election. Would not relator have to serve a notice upon the individual trustees demanding them to meet as a board, and if the notice is insufficient in the one case, would not the same argument apply in the other? At most, it is a distinction without any substantial difference. No valid reason, in our judgment, exists against the rule of practice prescribed in *Flagg* v. *Lady Bryan M. Co.*, and believing it to be correct we approve it.

Respondents also argue in support of the demurrer, that the action is wrongly brought against the individual trustees instead of against the board of trustees. We have already decided that the proceeding is virtually against the board. The fact that it is directed to the individuals constituting the board furnishes no ground for demurrer.

In *The Mayor* v. *Lord*, the writ was directed to the mayor and aldermen of the city of Davenport, and it was claimed that the city was incorporated by the name and style of "The City of Davenport," and that the writ ought to have been addressed to the corporation and was erroneously directed to the mayor and aldermen. The Supreme Court of the United States, in passing upon this objection, said: "The point that the writ was misdirected is not well taken.

The direction was substantially correct, and the court properly disregarded the objection." (9 Wall. 413.) A similar objection was made and overruled in *Fuller* v. *The Trustees of the Academic School in Plainfield* (6 Conn. 532).

Another point raised by the demurrer is, that the petition should have attached to it the verification prescribed by section 55 of the practice act. There is no uniformity in the practice. The application is sometimes made in the form of a petition, and sometimes in the form of an affidavit. The statute says the writ "shall be issued upon affidavit." (Stat. 1869, 264, Sec. 448.) Moses, in his work on Mandamus, 205, says, "The truth of the facts set forth in the petition should be shown by the *oath* of the petitioner, *or the affidavits of others.*" Tapping says, "The form of the jurat is the same as that portion of an ordinary affidavit in a personal action." (Tap. on Mandamus, 413.) Such is the form here used, and we think it is sufficient.

3. The Sierra Nevada Silver Mining Company applies for leave to intervene, and alleges that the stock of the Allen Company is now, in its entirety, the property of applicant; that relator hath no right, title, interest, or ownership in the same, or any part thereof; that should the prayer of the writ be granted, it would directly affect, adversely, the rights of applicant; "that it hath commenced suit against the relator and the Allen Company to recover said stock mentioned in the writ herein as claimed by relator, which suit is pending in the district court of the first judicial district of the State of Nevada."

It is claimed that the applicant brings itself within the rule laid down in *Harlan* v. *The Eureka Mining Co.*, *ante* 92; but we are of opinion that it has not alleged any fact that would make it either gain or lose by the direct legal operation or effect of any decision that might be rendered herein. This action is to compel the trustees of the Allen Company to call an annual election. The rights of applicant are not in any manner prejudicially affected by the granting of the writ of mandamus. If, as alleged, the relator is not the owner of the stock, and the applicant is, it

could, by instituting proper proceedings in the district court, enjoin relator from voting the stock at the election when called. Moreover, the applicant shows that it has commenced suit to determine its rights, and this question should, in our judgment, be left to the decision of the tribunal in which such action is pending. It can there be heard and judicially determined. If we should allow the intervention, we could not render any decision that would determine such rights or bind either party. The intervention is denied. (Justice Earll dissents from the ruling of the court upon this point.)

4. Respondents were allowed to amend their return, and having presented an issue of fact moved, upon affidavit, for a continuance, in order to procure the testimony of absent witnesses. After denying that relator is the owner of the stock, respondents allege that the Sierra Nevada Mining Co. is the true owner, and entitled to the possession thereof. Respondents have the right to show that relator has no beneficial interest in the subject-matter of his application. Before he can obtain the writ of mandamus, he must establish sufficient facts to show that he has a legal right to have something done by respondents which they have refused to do. If he forged the certificates of stock found in his possession, or in any manner feloniously obtained the possession thereof, he would not have any standing in court, and would not be entitled to the writ. He should not, however, be compelled, in a summary proceeding of this character, to contest his rights against the claims of third persons. The investigation should be limited to such facts as are necessary to determine the rights of the parties properly before the court. Respondents, by their return, seek to bring into court the Sierra Nevada Mining Co., and shield themselves behind its title, after its application to intervene has been denied, upon the ground that the controversy between it and the relator as to the title of the stock cannot be heard or determined in this proceeding. Such a practice, in our opinion, is not permissible. The facts, as alleged in the return, and set forth in the affidavit for con-

tinuance, do not, in our judgment, constitute any defense, upon the part of respondents, to the writ. Relator comes into court the apparent owner of the stock in his possession. Respondents admit that he paid the assessment thereon as levied by them; that at his request, they issued to him the identical stock which he presents in court, and that the stock now stands in his name upon the books of the Allen Company. Upon the facts thus presented, we are of the opinion that relator has shown such an interest in the stock, against respondents, as entitles him to the relief demanded.

5. Has relator a plain, speedy and adequate remedy at law? Respondents contend that under the provisions of section 5 of "An act to amend an act entitled 'An act to provide for the formation of corporations for certain purposes,' approved March 10, 1865" (Stat. 1875, 68), relator could accomplish the same result sought to be accomplished by this writ. It is true, that under the provisions of said section, the relator, having a majority of the shares of stock, might succeed in removing the present trustees and electing others. But such a proceeding does not dispense with or supersede the annual election provided for by the same section. It simply provides an additional remedy for stockholders holding a majority of the stock. It is admitted that in a corporation having one thousand shares of stock, a stockholder owning but one share would be entitled to the writ; but it is claimed that a stockholder owning nine hundred and ninety-nine shares should be refused. We think this position is untenable. The object of the writ is to have the trustees call an annual election, as provided by law. The writ is issued "to compel the performance of an act which the law specially enjoins as a duty resulting from an office." (Stat. 1869, 264, Sec. 447.) It cannot be held that there is any other plain, speedy or adequate remedy by which the trustees, in case of their refusal to perform their duty, can be compelled to call an annual election. To our mind, it is perfectly clear that the legal right to have such a duty enforced belongs to any stockholder independent of the number of shares of stock owned by him.

The two proceedings provided for in said section are entirely independent of each other.   The annual election is a meeting of *all* the stockholders; those holding a minority of stock as well as those having a majority, are entitled to vote, not only for the election of trustees, but upon other business that might properly come before the meeting, as the election of officers, employment of counsel, etc. The other meeting is a special one, that may be called at any time in the interest of a majority of the stockholders who desire the removal of one or more of the trustees.   If relator had instituted proceedings and removed respondents, he, or any other stockholder, could apply the next day for a writ of mandamus to compel the trustees to call an annual election.   The fact that the day provided for in the by-laws for calling such an election has passed, does not justify the trustees in refusing to call the meeting.   When the day has passed it is the duty of the trustees to call the meeting within a reasonable time—certainly to call it whenever demanded by any stockholder.   When called it is just as much an annual meeting as if called upon the day specified in the by-law.   (*Flagg* v. *Lady Bryan*, 4 Nev. 406.) Neither can the trustees refuse to perform their duty because relator had it within his power, by another proceeding, to have removed them from office and relieved them of their duties.

The mere fact that an action or proceeding will lie, does not necessarily supersede the remedy by mandamus.   The relator must not only have a specific, adequate and legal remedy, but it must be one competent to afford relief upon the very subject-matter of his application; and if it be doubtful whether such action or proceeding will afford him a complete remedy, the writ should issue.   (Moses on Mandamus, 112; *Fremont* v. *Crippen*, 10 Cal. 211; *Etheridge* v. *Hall*, 7 Porter, 47; *People ex rel. La Grange* v. *State Treasurer*, 24 Mich. 469.)

It is ordered that a peremptory writ of mandamus immediately issue commanding respondents to forthwith give notice of an annual election, as provided for by law, to be

held at a specified time and place, within ten days from the time the writ is issued.

BEATTY, J., dissenting:

In this case I dissent from the judgment of the court.

By the act amending the corporation law approved February 18, 1875 (Stat. 1875, 68), the legislature has provided a plain, speedy, adequate and specific remedy for the very wrong of which the relator complains. Our writ of mandamus can give him no relief beyond that which he can obtain by complying with the proceedings provided for in that act. He ought not to be allowed to invoke the aid of this Court, by this extraordinary process, to accomplish that which a compliance with the statute would effect in less time, at less cost, and with less complication.