[No. 2459]

# A. DEFANTI, RESPONDENT, v. ALLEN CLARK COMPANY (A CORPORATION), APPELLANT.

[198 Pac. 549]

1. CORPORATIONS—SPECIAL MEETING OF DIRECTORS IN ABSENCE OF SOME DIRECTORS NOT NOTIFIED ILLEGAL AND ACTION INVALID UNLESS RATIFIED.

Except in cases where it is impossible or impracticable to give notice, a special meeting of the directors of a corporation held in the absence of some of the directors and without any notice to them is illegal, and the action taken at such meeting, though by a majority of the directors, is invalid, unless subsequently ratified.

2. CORPORATIONS — MORTGAGE AUTHORIZED AT SPECIAL MEETING ATTENDED BY ONLY TWO OF THREE DIRECTORS INVALID WHERE NO NOTICE GIVEN THIRD.

A corporate mortgage authorized by two of the three directors at a special meeting of the board of directors of the corporation, of which no notice was given its third member, is an invalid act.

3. CORPORATIONS—BURDEN ON CORPORATION TO SHOW INVALIDITY OF MORTGAGE DULY EXECUTED.

In suit to foreclose a corporation's mortgage, where the mortgage itself, signed by the president and secretary of the corporation, with its seal affixed, was introduced in evidence, the burden was on the corporation to show its invalidity.

4. CORPORATIONS—IN SUIT TO FORECLOSE UNAUTHORIZED MORTGAGE, HELD THAT IT WOULD BE UNCONSCIONABLE TO PERMIT DEFENDANT TO SHIELD ITSELF UNDER ITS CORPORATE ENTITY.

In suit to foreclose a corporation's mortgage authorized at a directors' meeting at which only two of the three directors were present, the other not having been notified, in view of the fact that the evidence did not convince the court that the money borrowed on the mortgage was not applied with the knowledge and acquiescence of the corporation, and the fact that opportunity for the mortgagee to obtain other security is lost, it would be unconscionable to permit defendant to shield itself under its corporate entity, and decree of foreclosure will be affirmed, though the mortgage was unauthorized.

5. CORPORATIONS—ALLOWANCE OF ATTORNEY'S FEE, ON FORECLOSURE NOT UNAUTHORIZED WHEN RESOLUTION AUTHORIZING MORTGAGE WAS SILENT IN RELATION THERETO.

Where the resolution of directors authorizing a mortgage was silent as to attorneys' fees, in suit to foreclose the mortgage which provided for attorneys' fees, executed pursuant to such resolution, the court is not authorized to allow such fees.

APPEAL from Second Judicial District Court, Washoe County; *Thomas F. Moran,* Judge.

Action by A. Defanti against the Allen Clark Company, a corporation. From judgment for plaintiff, defendant appeals. **Judgment modified, and as modified affirmed. Petition for rehearing denied.**

*Hoyt, Norcross, Thatcher, Woodburn & Henley,* and *John D. Hoyt,* for Appellant:

Stockholders of a corporation are entitled to have their directors sit as a board, and are not bound otherwise, in the absence of ratification or estoppel. Edwards v. Carson W. Co., 21 Nev. 469; Hillyer v. Overman Co., 6 Nev. 51; Yellow Jacket Co. v. Stevenson, 5 Nev. 224; City v. Bank, 36 L. Ed. 390.

Officers having no authority to bind a company to a contract by directly executing it themselves, cannot do so by representing that they have been duly authorized. Hillyer v. Overman Co., supra.

No ratification or estoppel could exist in the case at bar, as the corporation had no knowledge whatever of the unauthorized transaction until almost immediately before the institution of suit. To effect a ratification, a party must act with knowledge of all material facts. Notice must be received by some one other than the actual wrongdoers. 2 C. J. 495; Edwards v. Carson W. Co., supra; Yellow Jacket Co. v. Stevenson, supra.

After acquiring knowledge of an unauthorized act, a principal is entitled to a reasonable time within which to repudiate the transaction. 2 C. J. 496; Union Co. v. Bank, 24 Fed. 648. Even the applying of a portion of the benefits to a debt of the corporation does not constitute ratification; and in many cases, where the principal does not acquire knowledge of the transaction until after the money has been spent, he is not even bound to return the benefits. Leggett v. N. J. Mfg. Co., 23 Am. Dec. 728; Duke v. Markham, 10 S. E. 1017; Foote v. Cothing, 15 L. R. A. (N.S.) 693.

The principal is not estopped to deny the validity of an obligation where the party dealing with his agents knows, or is charged with knowledge, that they are acting without authority. The elements of estoppel, in such a case, are clearly wanting. 2 C. J. 465; Hawley v. Curley, 74 Ill. 309; Kieor v. Klinsich, 42 N. E. 447; Clearwater v. Bagley, 133 N. W. 91.

The attorney's fee is admittedly unjust and inequitable, and this court, regardless of any other consideration, has authority to diminish the amount. 19 R. C. L. 469; 27 Cyc. 1785.

*J. H. Daly*, for Respondent.

By the Court, SANDERS, C. J.:

This action was brought by a mortgagee to foreclose a mortgage executed by the vice-president and the secretary of the Allen Clark Company, a corporation formed under the laws of this state, with its seal affixed, to secure the payment of a promissory note payable to the mortgagee, respondent herein, for the sum of $3,500. The defense pleaded and relied upon at the trial by the corporation appellant to defeat the mortgage was, in short, that the debt is valid, but the mortgage given to secure it is not. The ground of this claim is that Allen L. Clark, a director in the company, had no notice of the special meeting of the directors at which a majority of its board passed and adopted a resolution authorizing the vice-president and secretary of the corporation, in the absence of Allen L. Clark, its president, from the state, to give its note for the sum of $3,500 to the plaintiff or to some other person who would loan to the company that amount of money and to execute its mortgage to secure its payment. The mortgage recites the preamble of the resolution, and the resolution recites the purposes for which the money was to be applied, namely, to the payment of the sum of $2,500 due upon the purchase price of certain real estate contracted for by the corporation and other debts. It is not denied that the money was borrowed

and loaned in most perfect good faith for the uses and benefits of the company; in fact, the corporation in its answer to the complaint expresses its willingness that plaintiff may have judgment as in an action for money loaned for the sum of $2,500, with accrued interest, amounting to the sum of $300, and for any additional amount of the principal sum borrowed shown to have been actually used for the benefit of the company. It is not denied that the plaintiff mortgagee knew when he accepted the security that Allen L. Clark, a director of the company and its president, was absent from the State of Nevada, and had no notice of the special meeting at which the mortgage was authorized. In this situation the corporation contends that the only judgment that could legally have been rendered was for a money judgment. The trial court decided against these contentions, and made a general finding to the effect that the money was loaned in good faith for the benefit of the corporation, and that the latter had received adequate benefits from the full sum borrowed, and rendered its decree of foreclosure, together with a judgment for attorney's fees in the sum of $608. The corporation appeals.

The appellant makes the same contention in this court as it did in the lower court, namely, that conceding the company received the benefits of the money, the mortgage being invalid for the reasons stated, the decree of foreclosure must be reversed and a judgment ordered in favor of the plaintiff and against the defendant for the sum of $2,800. We are of the opinion that the evidence tends to show that the company actually received adequate benefits from the full amount borrowed. At any rate, there is nothing in the record to convince us to the contrary.

1. Passing to the legal question involved, as to the validity of the mortgage, we concede that, except in cases where it is impossible or impracticable to give notice, a special meeting of the directors of a corporation held in the absence of some of the directors, and without any notice to them, is illegal, and the action at

such a meeting, although by a majority of the directors, is invalid, unless subsequently ratified. 3 Fletcher, Cyc. Corp. sec. 1868.

The general corporation law of this state provides, inter alia, that a majority of the whole number of trustees or directors shall form a board for the transaction of business, and that every decision of a majority of the persons duly assembled as a board shall be valid as a corporate act, subject to the provisions of the by-laws and of the laws of this state. Rev. Laws, 1127. The question as to when the trustees or directors shall be considered as duly assembled is not settled by the statute. This seems to have been left by the lawmakers to the corporation itself to be covered by its by-laws.

2. It is provided in the by-laws of the Allen Clark Company that notice of a special meeting of its directors (composed of three members) shall be given to each director by mail or in person. Without reviewing the familiar reasons for the necessity of such a regulation for the proper conduct of the business and affairs of a corporation, it must be conceded that a mortgage authorized at a special meeting of the board of directors, of which no notice was given its third member, is an invalid act.

But it is not denied that it was within the power of the Allen Clark Company to execute the mortgage. In the case of Edwards v. Carson Water Co., 21 Nev. 496, 31 Pac. 381, the court quotes with approval from the case of Dexter Horton & Co. v. Long, 2 Wash. 435, 27 Pac. 271, 26 Am. St. Rep. 867, the syllabus of which case is (and we think it expresses correctly what the case decides) that—

"Where a mortgage by a corporation was not authorized by its trustees, but was executed by its president and secretary, who were two of its three trustees, and the corporation received the benefits of the mortgage, the defects in its original execution will be regarded as cured by ratification."

The Washington court, citing authorities, bases its conclusion upon the doctrine that where money has been obtained by a corporation upon its securities, which were unauthorized in the first instance, and the money was applied for the benefit of the company with the knowledge and acquiescence of the stockholders, the company and the shareholders are estopped to defeat the mortgage. This doctrine is recognized (with limitations) by this court in the case of Yellow Jacket S. M. Co. v. Stevenson, 5 Nev. 224. In the case of Jones v. G. & I. Co., 101 U. S. 622, 25 L. Ed. 1030, the court sanctioned and applied this doctrine to corporations upon the principle that equity neither enforces forfeitures nor lends its aid to the assurance of a mere legal right contrary to the equity and justice of the case.

3. Appellant asserts, however, that it had no knowledge of the existence of the mortgage until a few days prior to the bringing of this action for its foreclosure, and consequently had no time within which to repudiate the transaction, and that therefore the doctrine of receipt of benefits, acquiescence, and ratification cannot be charged against it, and has no place in this case. To support this position we are directed to the testimony of Allen L. Clark, the director who had no notice of the special meeting at which the purported mortgage was authorized, and its president. In this the appellant is unfortunate. It would would have been in a much better position if it had relied upon the invalidity of the mortgage to defeat foreclosure, and had stopped there. But we assume that as the mortgage is signed by the president and secretary of the corporation, with its seal affixed, when introduced in evidence the burden was upon the corporation to show its invalidity; and since the corporation concedes that at least $2,800 of the sum borrowed was actually applied for the benefit of the corporation, the only defense open to it to defeat the foreclosure was to repudiate the mortgage through Allen L. Clark, its president, upon the assumption that it had

no knowledge of its execution. As we interpret the record, it is evident that the trial court disbelieved Clark's testimony in toto, and we confess that in view of his particular relation to the corporation and the character of his testimony, we are not impressed with its sincerity or verity.

With what might be considered stupidity, he testified that the corporation was organized by himself and wife, with a subscribed capital stock of 10,000 shares, of the par value of $........, but that he did not know for what purpose the corporation was formed. He states, in effect, in the course of his examination, that he and his wife just formed it; that she attended to its affairs and business when there was anything to be done; and that he was absent from Nevada from July, 1918, to May, 1919.

The evidence shows that Allen L. Clark, the husband, owned 1,000 shares, his wife Emily 8,999, and W. J. Luke 1 share, of the capital stock of the corporation. These three persons constitute all of its shareholders and compose its directorate. Allen L. Clark is its president, W. J. Luke its vice-president, and Emily Clark, in her lifetime, was its secretary and treasurer. Luke is conceded to be only a nominal officer and shareholder. The mortgage was executed in September, 1918. Emily Clark died in May, 1919, shortly after her husband had returned to Nevada. This suit was commenced in October, 1919. In the interim between May and October, 1919, Allen L. Clark, the president of the company, had access to its corporate books, although there is evidence tending to show that they were in the hands of third parties. However, there is nothing in the record to show that he might not have obtained possession and control of them upon demand.

The mortgage was placed of record in the recorder's office of Washoe County shortly after it was delivered. The loan was personally negotiated by Emily Clark, wife of Allen L. Clark, to protect the property of the corporation from being sacrificed, as well as to pay

other existing obligations.   The evidence tends to show that the property of the corporation, after the death of Emily Clark, was threatened with litigation.   During all of this time Allen L. Clark, its president, remained perfectly silent until his solicitors set up the defense of the invalidity of the mortgage and no knowledge on the part of the corporation of its execution.   The questions propounded to him to elicit evidence to show lack of knowledge by the shareholders of the corporation were so leading as to put the answers thereto in his mouth, and we are in doubt as to whether or not the witness knew of the purport or purpose of the questions.   It is true he testified that he had no knowledge of the transaction.   It is not reasonable to believe this testimony, for no business man would be so indifferent to his own interests or to those of the corporation, under the circumstances, as to disclaim such knowledge.

Furthermore, the evidence tends to show that the trial court may have been warranted in drawing the inference that notice to Allen L. Clark of the special meeting, which was at the time urgent, would have been a mere matter of form and would have accomplished nothing.

4.   The evidence not being such as to convince us that the money borrowed upon its security was not applied with the knowledge and acquiescence of the corporation, we are of the opinion that to permit the company to shield itself under its corporate entity, under the facts of this case, and now disaffirm the mortgage, when every opportunity for its mortgagee to obtain any other security is lost, would be unconscionable.   Entertaining this view, we conclude to affirm the decree of foreclosure, even though the mortgage was unauthorized.

5.   It is urged that the court erred in adjudging and decreeing that in addition to the costs of suit defendant be taxed an attorney's fee of $608.   Counsel insists that such a sum is unreasonable, and that the judgment should be modified.   Whether or not the sum allowed is reasonable we do not stop to inquire, for the reason

that we are clearly of the opinion that the court was
not authorized to allow attorney's fees for any sum.
The terms of the resolution authorizing the mortgage
should be as broad as the mortgage itself, which is not
the case here.  It affirmatively appears upon the face
of the resolution that it is silent as to attorney's fees.
The officers were authorized only to borrow $3,500, give
the company's note, and secure it by mortgage.  The
note and mortgage go beyond this authorization.  The
note provides for a reasonable attorney's fee, and the
mortgage for an attorney's fee of 15 per cent of the
amount collected.  The lower court allowed plaintiff's
attorney a fee of $80 for negotiating the loan, and the
15 per cent as aforesaid.

In an action for the foreclosure of a mortgage against
a corporation, the plaintiff is not entitled to recover
counsel fees if the resolution of the corporation author-
izing the execution of the mortgage does not provide that
the payment of counsel fees shall be secured by it.  Shal-
lard v. Eel River Nav. Co., 70 Cal. 144, 111 Pac. 590.
And where the resolution did not expressly authorize
the officer to contract to pay attorney's fees in case of
suit, such a provision in a note is invalid.  Thomas v.
Wentworth Hotel Co., 16 Cal. App. 403, 117 Pac. 1041,
1046.

We conclude to modify the judgment by striking there-
from the attorney's fees, amounting to the total sum of
$608, and permit the decree of foreclosure to stand.

The judgment as thus modified is affirmed.

COLEMAN, J., concurring:

I concur in the order.

Conceding that the meeting at which the execution of
the note and mortgage was authorized was not duly
called, and that for that reason the mortgage was void-
able, I am strongly of the opinion that the corporation
should be estopped from attacking the validity of the
mortgage, under the circumstances of the case.  It
received the money upon the strength of the mortgage,

and cannot retain the same and be heard to say that the mortgage is not binding. This is the general rule as to ultra vires contracts (10 Cyc. 1156; Wisconsin L. Co. v. G. & W. Tel. Co., 127 Iowa, 350, 101 N. W. 742, 69 L. R. A. 968, 109 Am. St. Rep. 387; Wayte v. Red Cross Pro. Society [C. C.] 166 Fed. 372), and the process of reasoning leading to the result in those cases, which is equally applicable here, as well as good morals, impel a like conclusion under the facts of this case.

Furthermore, I am of the opinion that the trial court was justified, under the evidence, in concluding that the transaction was ratified by Allen L. Clark. Of course, in doing so, it must have totally disregarded the positive testimony of Clark to the effect that he knew nothing about the mortgage in question until a demand for the payment of the interest a few days before the foreclosure proceedings were instituted. His testimony, as a whole, does not commend itself to the court. Though having been away from Reno for some months, he returned a few days before the death of Emily Clark, his then wife, who, so far as appears, left him as the owner of all of the stock in the company, except one share, which was held by Mr. Luke simply to qualify him as a director and officer of the company. Mr. Clark is certainly the only surviving officer of the company who had any material interest in its affairs, yet he testified that he had not looked into its condition enough to learn of the mortgage in question; and this, too, in the face of the fact that soon after the death of the wife he obtained from the bank the canceled checks of the company, some of which were upon a part of the borrowed money. It is quite remarkable that he should manifest sufficient interest in the status of the company to get the canceled checks, but not to prosecute an investigation as to all of its transactions during his absence. But while he testified flatly that he knew nothing of the mortgage in question until payment of the interest was demanded, his evidence as to the conversations which took place when the interest was

demanded, does not indicate any surprise at learning of the existence of the mortgage, but, to my mind, indicates that he knew of its existence.  He said:

"Well, he asked me if I could pay the interest, and I told him I couldn't pay it all, but could pay him half of it now, and, if he would wait a few days until rent was paid, I could pay him the other part of it.  He couldn't do it, he said.  I told him to go and see my lawyer about it, then, and he didn't go."

This testimony was given on direct examination.  It is true that thereafter, in reply to a suggestive question by his counsel, he did state that he told the party demanding the interest that he knew nothing about the mortgage prior thereto.  But in view of the character of the examination, and of all the circumstances, the trial court had a right to reject so much of his testimony as it saw fit.

While it is not a matter of which we can take judicial notice, I think it perfectly proper for me to call attention to certain improbable evidence given by Mr. Clark. Evidently for the purpose of bolstering up his contention that he did not know of the existence of the mortgage in question, he testified that he thought the indebtedness which was discharged by the money borrowed from respondent had been paid out of $3,500 received as insurance money on the Ralston-street property.  The fact is that only $1,000 was received from that insurance, and it had not been paid when he gave the testimony alluded to, as it was necessary to bring suit to recover it, which was finally disposed of on February 28 last.  See Clark v. London Assur. Corp., 44 Nev. 359. In view of the fact that this witness has been a party to, or has given testimony in, several suits which have come to this court within the last three years (Allen Clark Co. v. Francovich, 42 Nev. 321, 176 Pac. 259; Allen Clark Co. v. Moran, 42 Nev. 356, 176 Pac. 413; Clark v. Clark, 44 Nev. 67; Clark v. London Assur. Corp., supra, and the instant case), it may be, of course, that he has become somewhat confused as to facts, but

it might stand him in hand to be more guarded in giving testimony.

ON PETITION FOR REHEARING

*Per Curiam:*

Rehearing denied.