MILTON A. BOWLER AND MILTON D. BOWLER, PETITIONERS, v. RALPH J. VANNOY, SHERIFF OF CHURCHILL COUNTY, STATE OF NEVADA, RESPONDENT.

No. 3598

February 10, 1950. 215 P.2d 248.

82

*Morley Griswold* and *George L. Vargas,* both of Reno, for Petitioners.

*John S. Sinai,* of Reno, and *Andrew L. Haight,* of Fallon, for Respondent.

## OPINION

By the Court, HORSEY, C. J.:

In the above-entitled proceeding, the petitioners, Milton A. Bowler and Milton D. Bowler, by their attorneys, the Honorable Morley Griswold and the Honorable George L. Vargas, on the 8th day of December, 1949, presented informally to the justices of this court a petition for writ of mandate.

Such petition, together with the matters of fact and law alleged therein and the argument presented on behalf of said attorney George L. Vargas for petitioners disclosed sufficient cause to justify such an alternative writ to be issued in the premises.

Accordingly, the petition aforesaid was by the undersigned chief justice, concurred in by the honorable associate justices, ordered to be filed, and such alternative

writ of mandate to be issued on said 8th day of December, 1949.

On December 12, 1949, the alternative writ of mandate ordered and issued as aforesaid, on December 8, 1949, was duly filed and is as follows:

"The State of Nevada to Ralph J. Vannoy, Sheriff of Churchill County, Nevada, Greetings:

"Whereas, it manifestly appears by the verified petition of Milton A. Bowler and Milton D. Bowler, the petitioners beneficially interested herein, that on the 21st day of October, 1949, you, the said Sheriff, went upon the ranch and premises of the petitioners and after notice by said petitioners and others that said petitioners owned the dairy cattle and bulls thereon, you did willfully and unlawfully seize, take possession of, and remove, or cause to be seized, taken possession of and removed, forty-one (41) head of dairy cattle and one (1) bull from the said premises of the petitioners; that thereafter, and on or about the 25th day of October, 1949, said petitioners, Milton A. Bowler and Milton D. Bowler, by their written claim verified by oath and served upon you, the said Sheriff, claimed the said forty-one (41) head of dairy cattle and one (1) bull as their property; that no undertaking whatsoever was filed within five (5) days after said written demand was given to you, the said Sheriff, in order that you might hold said property; that notwithstanding the failure of any person to give said undertaking, you wholly failed and refused to release the said forty-one (41) head of dairy cattle and one (1) bull to the petitioners; that no application or petition was filed for any hearing to determine title to the said cattle and said bull in question within ten (10) days after the said third party verified written claim had been served upon you; that, on or about November 2, 1949, the petitioners served upon you an additional notice and demand for the immediate return of all of said property and for their damages, and that you have wholly and completely failed to return said property or account therefor, or account in damages

in connection therewith, and that there is not a plain, speedy and adequate remedy in the ordinary course of law; and

"Whereas, by an order of this Court duly given, made and entered in the above-entitled action on the 8th day of December, 1949, it was ordered that an Alternative Writ of Mandate should issue to you;

"Therefore, it is hereby commanded that you immediately after the receipt of this Writ, forthwith return to the said petitioners, Milton A. Bowler and Milton D. Bowler, at their premises, the Bowler Ranch in Churchill County, Nevada, from which ranch you seized, took and removed, or caused to be seized, taken and removed, forty-one (41) head of dairy cattle and one (1) bull, on October 21, 1949, the said cattle and said bull which you then and there seized, took possession of and removed or caused to be seized, taken possession of or removed, together with any offspring thereof born from or after said October 21, 1949, or that you show cause, if any you have, before this Court in the Courtroom of the Supreme Court of the State of Nevada, in Carson City, Nevada, on the 22nd day of December, 1949, at the hour of ten o'clock A. M. of said day, why you have not done so."

The respondent, Ralph J. Vannoy, sheriff of Churchill County, State of Nevada, pursuant to said alternative writ, having failed to return forthwith to the said petitioners, Milton A. Bowler and Milton D. Bowler, at their premises, namely, the Bowler Ranch in Churchill County, Nevada, the forty-one (41) head of dairy cattle and one Holstein bull, and which, pursuant to said alternative writ the said sheriff was commanded to do, before this court in the courtroom of the supreme court of the state, in Carson City, Nevada, on the 22d day of December, 1949, at the hour of ten o'clock a. m. of said day, or to show cause why he had not done so, the said respondent sheriff then and there appeared, and in open court made his answer and return to such alternative writ and petition herein. The order to show cause was proceeded

with and immediately thereafter, John S. Sinai, Esq., attorney for the respondent sheriff, assuming the affirmative, pursuant to such order to show cause, and George L. Vargas, Esq., attorney for the petitioners in opposition thereto, proceeded with their respective arguments, and in connection therewith upon such hearing before this court, certain briefs or points and authorities were by the said attorneys for the respective parties permitted to be filed, and same have been duly considered. Indeed, we feel abundantly able to state that the respective attorneys in this proceeding have, doubtless laboriously, and certainly with diligence and much careful research, produced and presented their respective arguments both written and oral.

At the hearing upon the order to show cause, in this court, on December 22, 1949, the court upon the presentation and filing of respondent's answer and return, and of respondent's "Notice of Motion and Motion to Quash and Dismiss Alternative Writ," and in connection therewith the chief justice had not then had time or opportunity carefully to read such motion before the arguments, and upon ruling in connection with an objection by Mr. Vargas, attorney for petitioners, to the effect that the transcript should not be deemed to include the evidence in the instant proceeding in this court upon mandamus, and the chief justice having in mind and believing counsel was referring to the proceeding in the First judicial district court of the State of Nevada, in and for the county of Churchill, No. 4110 and not to the mandamus proceeding No. 4272 in that court, and that such transcript was voluminous and referred to the trial in the lower court in said former action No. 4110, and was beyond the proper scope of such motion to quash in the instant proceeding, so ruled. The chief justice has since ascertained that he was mistaken in believing the reference was to No. 4110, and that the objection actually related to No. 4272, the proceeding upon mandamus in Judge Guild's court.

It is ordered, therefore, that said ruling as to such

objection be and the same is stricken, and instead that the said objection be and is overruled, for the reason that the transcript referred to in the mandamus proceeding in relation to No. 4272, and which has since been permitted to be filed, contains important matters of evidence which, it is believed, may well be of value in the instant proceeding. This is not said in order that the action of the district court, in that mandamus proceeding may in any manner change or affect or have any bearing upon any action there taken, but is solely for the purpose of considering and acting upon the instant mandamus proceeding No. 3598 in this court (and which we view as being entirely a separate and independent proceeding), so that the facts which it is believed are authentic, may possibly make clearer than might otherwise appear, the factual and legal situations involved, to the end that correct determinations may be accomplished.

It appears from the record of this instant mandamus proceeding No. 3598 that in the said action in the First judicial district court, in and for the county of Churchill, designated as No. 4110, Stella B. Leonard Belanger, was plaintiff therein, and David J. Belanger, H. M. Childers and Vincent Vrenon, individually and doing business under the name and style of Modern Dairy, were defendants. It further appears herein that prior to the action No. 4110, a prior action No. 4095 in the same district court had occurred, and in which Stella B. Leonard Belanger, plaintiff therein, had been awarded decree of divorce from her husband, David A. Belanger, the defendant in that action, and that in said action the said Stella B. Leonard Belanger had been decreed to be the sole owner of certain cattle and that said cattle consisted of forty-one (41) head of dairy cows and one Holstein bull.

And in No. 4110, it appears in effect from the judgment therein that Stella B. Leonard Belanger had not succeeded in obtaining the possession of said cattle, for the reason that David J. Belanger had purported to sell same to one H. M. Childers, on July 31, 1948, together

with all increase born thereto and/or substitutions made therein by either or both of said defendants, H. M. Childers and Vincent Vrenon, and it further appears, in effect, from said judgment that said H. M. Childers, on September 10, 1948, had purported to sell same to said Vincent Vrenon. Conversely, the order, judgment and decree provided, in effect, that Vincent Vrenon return to defendant H. M. Childers the identical forty-one (41) head of milk cows and the two (2) bulls which said Vrenon purported to purchase from the said Childers, on said September 10, 1948, together with all increase born thereto and/or substitutions made therein, and that defendant H. M. Childers deliver and surrender to the plaintiff in Churchill County, Nevada, the identical forty-one (41) head of milk cows and two (2) bulls, which defendant H. M. Childers purported to purchase from the defendant David J. Belanger, on July 31, 1948, with any and all increase born thereto and/or substitutions made therein, by either or both of defendants, H. M. Childers and Vincent Vrenon. The testimony, copy of which was, on January 3, 1950, filed in this court, and which was heard before the Honorable Clark J. Guild, district judge, on the 22d day of November, 1949, in the matter then before that court petitioning by the petitioners therein, for a writ of mandate, appears, in part, as follows:

R. J. Vannoy, sheriff of Churchill County, Nevada, appearing and sworn as an adverse witness therein, testified in effect that, the said Vannoy, on the 21st day of October, 1949, on that day went upon the premises of Milton A. Bowler in Churchill County, Nevada, and that he was taken there by Vincent Vrenon and that they were there together; that others were there while he, Vannoy, was there, on the said premises, including Stella B. Leonard Belanger, Mr. Coleman, Mrs. Stroup, Pete Burgess, and the Springer boy, Milton Springer, he believed was his first name, and one other gentleman whose name witness did not recall; he presumed Mr. Coleman was an attorney at law with Mr. Sinai. Sheriff

Vannoy, continuing, stated, "I would like to explain what occurred there before I went there; why I went there; what took me there. * * *" "I received from Mr. Coleman which was a writ of execution, a judgment and an instruction from the attorney and I read the papers. I went down to see Mr. Vrenon at the Modern Dairy. Showed him the papers." "* * * had with him a writ of execution and instructions." "* * * came back to my office, from there went down to Vrenon's the second time and Mr. Vrenon took me out to Bowler's Ranch. He went in his car and I went in mine but he led me the way out voluntarily." The witness said, in effect, that he had the writ in his possession when he went upon the premises of Bowler, that he saw Milton A. Bowler and Milton D. Bowler at their premises when he went there on the 21st day of October, 1949—that Mr. Vrenon pointed them out to him, that he didn't know them before. The witness further stated: "Mr. Vrenon was with me. Stated the cattle were on the Bowler Ranch. * * *" "Mr. Bowler was present * * * Mr. Bowler also said they were there—they were right out there * * *." He said, "they are right out there." He said, "you can see some of them now. There is the bull. When I said I had a writ giving those cattle to Mrs. Leonard and Mr. Bowler says, 'they are there in the field.'"

Continuing, Mr. Vannoy further testified: "Mr. Bowler says, 'May I go in and use the telephone'? I said certainly, I have no objection to what you do, Mr. Bowler. I have no quarrel with you or anybody else over any cattle. * * *" "Mr. Bowler said they could drive the cattle in the corral there. He didn't have any loading (chute). They could drive them in the barn and load them in the gate. They had a truck that had an ingate that would drop down."

Mr. Vargas, then questioning, asked Mr. Vannoy:

"Q. As a matter of fact, Mr. Vannoy, at the time that you went out to Bowler's Ranch on the morning of October 21st, 1949, to demand possession of these cattle,

didn't you ask Mr. Bowler to point out the cattle? A. He pointed them out voluntarily. I didn't ask him anything.

"Q. You did not ask him to point them out? A. No, sir.

"Q. As a matter of fact, Mr. Vannoy, did not Mr. Bowler say to you in substance, 'I am not going to point out any cattle. I own them all. They are all mine?' A. No sir, *not at that time.* (Italics ours.)

"Q. When did he make such a statement if not at that time? A. Perhaps later or something to that effect. He talked to another party.

"Q. How much later? A. Mr. Bowler was very cooperative to start with.

"Q. Tell what occurred at the Bowler premises on the 21st day of October. A. Mr. Coleman,—can I talk fully on this?

"Q. Any statements made in the presence of Mr. Bowler you may state. A. That's what I want.

"Court: Just a minute. If Bowler or either one of them were present you can state the conversation. A. Mr. Bowler was present. Mr. Coleman asked Mr. Bowler if he would cooperate with him in getting these original forty-one head of cattle and two bulls. Mr. Bowler stated one bull had died and we said, 'We will concede that.' Mr. Coleman told Mr. Bowler in my presence and Mrs. Leonard's presence that 'We will not touch any cattle or cow on this place that you say you have acquired from any other source. We only want these original cattle.' He says, 'if you will just point out any one we will not touch it.' Mr. Bowler refused to do that. * * *"

Mr. Vargas: "Q. Now on that day there was loaded and removed from the premises of Mr. Milton Bowler forty-one head of dairy cows, were there not? A. Yes.

"Q. And one Holstein bull? A. Yes. May I explain a little further there?

"Court: Yes. A. Mr. Bowler and his son knowingly and willingly let them haul those fifteen cattle away and I told him not to. He said, 'Let them go. We'll see

about it later,' and I says, 'It is your responsibility, not mine.' He says, 'I refuse to let you tell Mr. Coleman.' Regardless of what he tells you now that's the exact truth."

Mr. Vargas: "Q. As a matter of fact, Mr. Vannoy, after these cattle had been loaded, did not Mr. Bowler at that point point out fifteen head of cattle and advise you that they had never had any history in the Belanger litigation? A. Yes. And I said, 'Let's get them.' And he didn't take them and he says, 'No, let them go.'

"Q. You say at that time you were willing to take those cattle off of the truck? A. Certainly, Mr. Coleman was willing to take them off. He didn't want to touch anything, only the original cattle.

"Q. Mr. Bowler said, 'No, you go ahead and take those too'? A. He said, 'let them go. He can do anything'—he says—I know what he said and he further said, 'The rest of her cattle are out there in the field. She couldn't find them.' He says, 'Twenty-six, and the bull are OK and the rest of hers are out in the field.' "

It appears further from Mr. Vannoy's testimony, that the third-party claim was served upon him, Mr. Vannoy, on October 25, 1949, and that he turned it over to the attorneys for the plaintiff (Mrs. Leonard) and that her attorneys were Mr. Sinai, Mr. Haight, and Mr. Coleman.

Mr. Vargas asked whether Mr. Vannoy demanded of the plaintiff or her attorneys that they post a bond in connection with that third-party claim, and Mr. Vannoy stated, "I told them—that's what I asked for."

"Q. That demand likewise was made on them on that same day, October 25, 1949? A. Well, I was of the opinion that I didn't have any cattle, title was taken by Mrs. Leonard, not me."

Asked by Mr. Vargas, whether he, Mr. Vannoy, had requested a bond the witness answered, "No, I did not. I gave them the papers."

"Q. (By Mr. Vargas) Did the plaintiff in that action, Stella Leonard Belanger ever serve you with an undertaking executed by two sureties in a sum equal—double

the value of these cattle as alleged in that third party claim? A. No.

"Q. Do you know where these cattle are at the present time? A. Yes, sir.

"Q. Where are they? A. Over in Mrs. Leonard's ranch at Hazen.

"Q. And that is in Churchill County, Nevada? A. Yes, sir."

■ In connection with such third-party claim, signed by Milton A. Bowler and Milton D. Bowler, third-party claimants, October 25, 1949, and served upon Sheriff Vannoy on said last-mentioned date, and a copy of which is attached to said "Petition for Writ of Mandate," filed in this court December 12, 1949, the Bowlers in their said third-party claim stated the particulars in regard to fifteen head of said cattle, showing in detail the several transactions mentioned as to the months in 1947 and 1949 in which the dairy cows were purchased by the Bowlers, the number of cattle involved in each transaction, and from whom they were purchased, and the several bills of sale from the respective sellers and received to the Bowlers, who were the purchasers.

It appears from the testimony that as to the fifteen head of dairy cows there can be no doubt that they had been lawfully acquired by the Bowlers, without relation to and separate and apart from the Belanger cattle, so-called, and that the twenty-six head of the other dairy cows and the Holstein bull had been purchased from Vincent Vrenon, together with other cattle, who had executed to the Bowlers a bill of sale therefor.

Mr. Vannoy said, in effect, in his testimony that Mr. Bowler said, "The rest of her cattle are out in the field." Then Vannoy further said, "She couldn't find them." (Meaning that Mrs. Leonard could not find them.) "He (Bowler) says, 'Twenty-six, and the bull are OK and the rest of hers are out in the field.'"

It is acknowledged, therefore, by Mr. Vannoy in his testimony, in effect, that the fifteen head of such dairy cattle were unquestionably the cattle belonging to the

Bowlers, and were carelessly, or at least mistakenly, taken and loaded for transportation, and shortly thereafter, removed from said premises of the Bowlers. Ostensibly, upon the alleged basis of the said writ of execution, issued on said 21st day of October, 1949, upon neither of which the writ of execution, nor the judgment purported to be against the Bowlers, neither the judgment nor the execution purported to include Milton A. Bowler and/or Milton D. Bowler, nor were they, or either of them, even mentioned therein. It would appear that Mrs. Leonard could not identify fifteen of such dairy cows, and that she, and perhaps Mr. Coleman acting for her, and doubtless assisting in gathering and loading the cattle, decided to substitute other cattle for those she could not find, and, in any event, to make sure of taking and loading what they claimed to constitute twenty-six head of the dairy cows and the Holstein bull, and another fifteen head, to make sure they had enough to make up the total of forty-one head of dairy cows and the Holstein bull. (Apparently the other bull died, according to Mr. Vannoy's testimony.)

Mr. Vannoy's testimony would seem to indicate that both he and Mr. Coleman were ready, almost eager, to return the fifteen head belonging to the Bowlers, but that Mr. Bowler waved Mr. Vannoy aside and repeatedly said, "No, let them go. We'll see about it later * * *." And Mr. Vannoy said, "Let's get them. And he didn't take them and he says, 'No, let them go.'"

It may have been that Mr. Bowler, who claimed the right to *fifteen head* of cattle, and which were clearly his, and had claimed *all* of the cattle, and refused to make any segregation or to acknowledge any right on the part of Mrs. Leonard to the other twenty-six head, felt perturbed, and no doubt annoyed and aggravated by the actions of the sheriff, and his assistants, and told Vannoy not to protest against loading the cattle, or removing them, his idea, perhaps, being that he meant by the words, "We'll see about it later," to imply that the Bowlers could by legal action find vindication.

On the contrary, Mr. Bowler, in his testimony upon the same day in the mandamus proceeding before the Honorable Clark J. Guild, district judge, positively denied that he had made such statement. It appeared that to do so would seem to have been against Bowler's own interest, and it is unreasonable to believe, it would seem, in view of all that had occurred, that Bowler would have indulged in a sort of parody or comic-opera arrangement not unlike that in which "Dear Alphonse" with great courtesy and profuse gallantry said, "You go first, my dear Alphonse," and Mr. Gaston said, "No, I would not go before you my dear Alphonse, you go first."

As to the fifteen head of cattle there is, in this court's view, not the slightest doubt that said fifteen head of dairy cows should not have been taken, loaded and removed by Sheriff Vannoy, from the premises of the Bowler Ranch, near Fallon, in Churchill County, Nevada, and that the action taken by Sheriff Vannoy, under the instructions of Mr. Sinai, attorney for respondent, were entirely without right or justification, and constituted the conversion of such fifteen head of dairy cattle.

What should we say as to the so-called "Belanger" cattle, being forty-one (41) head of dairy cattle and one Holstein bull which were taken from the Bowler Ranch, by Sheriff Vannoy, under the said writ of execution issued October 21, 1949, and pursuant to and based upon the said judgment ordered to be entered in the First judicial district court, in and for the county of Churchill, and filed as aforesaid on said last named date in the clerk's office of said court, in action No. 4110?

It is our view, that necessarily, in this mandamus proceeding in this court No. 3598 the facts must be largely predicated upon the papers, documents and files herein, including the testimony taken before Judge Guild in the mandamus proceeding in the First judicial district court of the State of Nevada, in and for the county of Churchill, commencing on November 22, 1949.

■ From the facts elicited from the testimony it

appears that as to the twenty-six head of cattle, actually levied upon by the said execution on October 21, 1949, and taken and removed by Sheriff Vannoy from the Bowler Ranch premises, such cattle may, or may not, have been the identical cattle originally owned by David J. Belanger and Stella B. Leonard Belanger, or either of them.

Because of the judgment and execution No. 4110, we must assume as to that action, although same has been appealed to this court, and we are not at liberty to determine or pass upon any phase or part of it until same is actually before us, that such action cannot be deemed to have any effect as to other parties not included in that action, nor made parties thereto. This applies particularly to Milton A. Bowler and Milton D. Bowler.

One of the questions, therefore, which we must consider in this mandamus proceeding No. 3598 is as to whether or not the twenty-six head of dairy cows taken, loaded and removed from the Bowler Ranch, October 21, 1949, under such writ of execution levied by Sheriff Vannoy, were sufficiently identified as being the herd of dairy cattle known generally as the "Belanger" cattle. It is doubtful whether any of the persons present when the cattle were seized upon execution by Sheriff Vannoy, took pains or care to determine positively and with certainty whether as to each of such dairy cows, such persons could or did state that they, or either of them, were certain of their identification.

Mr. Vrenon claimed, by the "sweep of the hand," that the "Belanger" cattle were there, and were owned by him, Vrenon, because he had transferred them to the Bowlers, and had not been paid. The latter question we will refer to further on in this opinion, but upon the question of identification may we say that Mr. Vrenon undertook to point out, by brand, earmarks, specific description, or otherwise, as to any particular dairy cow, that he had accurately checked sufficiently to state that he had identified it? We find nothing from the record that he had done so. Mrs. Stella Leonard

attempted to check as to the entire forty-one (41) head of dairy cattle, but Mr. Vannoy acknowledged that she had not been able to find fifteen of them. Instead of actual identification, she had apparently made a "general guess" as to a herd of cattle that *should* be found upon the Bowler Ranch, and *should* be deemed, generally, to be of the kind and character that formerly were a part of the Belanger cattle. Certainly, Mr. Coleman had no actual knowledge which would enable him, with certainty and particularity to establish proper identification. Sheriff Vannoy, whose duty it was to make a minute and detailed inspection as to each of such dairy cattle, in order to obey the law and protect the rights of the adverse interests involved, seemed merely to allege *generally* as to the supervision and removal of the cattle, but we fail to find that he *actually* made any particular inspection such as to justify him in stating that he had made any really careful, painstaking and diligent determination such as to be certain of sufficient identification as to each of such cattle.

The next question to be considered is as to whether or not, the respondent Vannoy, notwithstanding the fact that the Bowlers upon their ranch in said premises were in actual possession of such dairy cattle, with the right of possession, and claim of ownership thereof, was rightfully or wrongfully entitled to take such possession and to seize and remove such cattle from said premises by reason of the fact that Stella B. Leonard, formerly known as Stella B. Leonard Belanger, had caused to be placed in his hands a writ of execution, dated October 21, 1949, and predicated upon a judgment in which it was, in effect, alleged that certain cattle alleged to have been the identical cattle comprising a herd of forty-one head of dairy cows and one Holstein bull had been adjudged to have been Stella Leonard's cattle?

And did Sheriff Vannoy, or the plaintiff, Stella B. Leonard as she appeared in the court below in case No. 4110, or her attorneys, have any lawful right or justification to cause such cattle to be seized and removed

notwithstanding that neither of the Bowlers were in any respect parties to such action No. 4110, nor had they been served with any legal process as to said execution, or as to such judgment?

According to the testimony before us, Mr. Vrenon testified, in effect, that some time long prior to the 21st day of October, 1949, upon which both said judgment and said execution were filed in case No. 4110, and which, according to Bowler's testimony, was at a time early in the month of August, 1948, and which was undisputed, a transaction occurred between Milton A. Bowler (and perhaps both the Bowlers) in which they purchased said "Belanger" cattle. The Bowlers and Vrenon acted upon the basis of an agreement of purchase and sale, whether oral or written, does not appear, but, at least, a written bill of sale was executed by Vrenon and placed in escrow. From the testimony it is apparent that by agreement of both Vrenon and Milton A. Bowler, the cattle were delivered to the Bowlers and placed in their possession and upon the said Bowler Ranch. It appears further that Vrenon did not receive from H. M. Childers, a bill of sale to said cattle until September 10, 1948, but most likely an agreement written or oral had occurred between Childers and Vrenon prior to the execution of the actual bill of sale, as there is no indication shown from the testimony that some suitable agreement or arrangement had not occurred between them prior to the transaction between Vrenon and the Bowlers early in August, 1948, nor that the Bowlers were not authorized to take over from them the cattle which had been taken over by Vrenon from Childers. There is nothing which appears that the transaction was other than a legitimate, bona fide transaction. Indeed, the fact that Vrenon in his testimony claimed the ownership of the cattle because, as he claimed, they had not been paid for by the Bowlers and that he apparently considered they belonged to him was merely his own conception of the transaction. Under such circumstances, the matter of payment would not

prevent the equitable title to the cattle passing from Vrenon to the Bowlers, whether or not the bill of sale, so placed in escrow, had actually been delivered and legal title effected. Other factors such as the question as to whether or not time was made of the essence of the agreement, would doubtless be involved, dependent upon the terms of the agreement, and whether written or oral. The relationship of Vrenon on the one hand and of Bowlers upon the other, in case of disagreement might bring litigation as between them, but not necessarily as to others, such as Belanger or the former Mrs. Belanger, now Mrs. Leonard, or Childers. From aught that appears from the evidence, the transaction involved was one entirely between Vrenon and the Bowlers, and there being nothing apparently in the record to disclose that the transaction was other than a bona fide, genuine transaction, unaffected by a knowledge on the part of the Bowlers of any connivance, conspiracy, fraud or other improper or tortious action to the detriment of Stella B. Leonard, formerly known as Stella B. Leonard Belanger, as to the transfer of said "Belanger" cattle, so-called, the well-settled legal presumption was, as to the said transaction, that the Bowlers, in taking into their possession, the said forty-one head of dairy cattle and the one Holstein bull, *did so lawfully and rightfully, and not unlawfully and wrongfully.* One acting in such a transaction, who has become vested rightfully with the possession and right of possession of property, must be deemed to have the right, until the contrary appears and is judicially determined, to the very high position of an innocent third person who has given value for the property received, and is without notice of any prior equity or equities as to which he owes any duty, and that he has acted in good faith.

█ Under civilized conditions such as we enjoy in the United States of America, under the enlightened principles of common law and equity, actions and conduct involving human relationships and transactions, must be presumed to be rightful rather than wrongful, at least

until the contrary clearly appears. If that were not so, the individual person could not be reasonably secure in the enjoyment of his property. Without the right to be heard, nor without any suit at law or equity or any proceedings having been filed against him of which he has been given notice, his property could thus be easily confiscated. But because of such civilized principles, beneficent and necessary in their application, the great constitutional provisions, such as the right to life, liberty or property, must not be violated, but on the contrary must be carefully and sedulously preserved.

So, in the instant proceeding in case No. 4598, and in view of the record before us in this mandamus proceeding, we do not find as to the Bowlers any sound legal basis upon which Sheriff Vannoy was justified in taking and removing from the Bowlers and upon their premises the cattle consisting of forty-one head of dairy cows and one Holstein bull, which at one time had belonged to others, and as to whom litigation had been had between some others, but not as to the Bowlers.

As to No. 4110 there can be no doubt litigation had occurred between Stella B. Leonard, formerly Stella B. Leonard Belanger, on the one hand, and David B. Belanger, H. M. Childers, and Vincent Vrenon on the other, and that the above-mentioned parties were parties in that action, and that a judgment and execution, copy of which were attached to the instant proceeding, were filed, October 21, 1949, and that such execution was placed in the hands of Sheriff Vannoy to be enforced. That fact, however, could not and did not affect the rights of the Bowlers, who were not parties to such action, nor entitle Sheriff Vannoy to levy under said execution, the cattle above mentioned, which were in the possession of the Bowlers, and who claimed that such cattle were rightfully in their possession, and who asserted ownership in and to them.

It has often been stated, and reiterated that an execution in relation to property cannot be properly levied upon the property of a third person or stranger,

to whom he is not at such time of levy, a party. Upon the basis of the right of possession such third party or stranger to the proceedings had the right of immediate possession, and was not even required to assert or file what is generally known as a third-party claim. See 33 C.J.S., Executions, sec. 168, p. 386; Haubrich v. Heaney, 161 Minn. 92, 200 N.W. 930.

█ As to executions, if a sheriff, levying upon such an execution is notified that the claimant, or third party in possession asserts ownership to the property in question, yet the sheriff insists upon retaining possession, he is liable to the true owner in trespass or trover. Pilcher v. Hickman, 132 Ala. 574, 31 So. 469, 90 Am.St. Rep. 930.

In 2 Freeman on Executions, 2d Ed., sec. 254, pp. 799, 800, reference is made to Lyon v. Goree, 15 Ala. 360. The learned author on said pages 799, 800 has stated: "The writ, though for the possession of specific chattels which it describes, may command the officer to take them from the possession of the defendant. If so, it does not justify him in taking the goods from the possession of a stranger to the writ to whom they belong."

In the instant proceeding, the testimony in the matter of the writ of mandamus No. 4272 in Judge Guild's court, discloses that, upon the occasion of Milton A. Bowler visiting Sheriff Vannoy in his office, at or during the time the cattle were being loaded, pursuant to the said levy upon execution, a friend of the Bowlers, Mr. Price Ronnow of Fallon, Nevada, also visited such office at that time and suggested calling James W. Johnson, Esq., attorney and district attorney of Churchill County, Nevada, but who had been concerned as a private attorney, representing the defendants in No. 4110, in which the only defendants therein were David J. Belanger, H. M. Childers and Vincent Vrenon, and it does not appear that Mr. Johnson was then representing the Bowlers. In any event, the testimony shows that at such time and place, Mr. Johnson came at Mr. Ronnow's

request, and definitely stated to Sheriff Vannoy that, before he had the right to take the said cattle from the Bowlers, or from the Bowler Ranch, he, Sheriff Vannoy, would have to require that a good and sufficient bond or undertaking be furnished him by or on behalf of Mrs. Leonard, in order to indemnify such sheriff in the premises.

But it appears that Sheriff Vannoy did not heed the requirement as to furnishing such bond. On the contrary, at one point in the testimony, he said, in substance, to Mr. Bowler that he was not required to give a bond, and on or about that time stated to Mr. Bowler that if he, Bowler, were injured or damaged he could sue. It seems clear that, under the circumstances, as to the third-party claim hereinbefore mentioned, the fact that such claim was not executed until October 25, 1949, and duly served (which, as it appears, was the very earliest in which Mr. Vargas, attorney for the Bowlers, could be informed as to the action which had been taken by the sheriff and properly prepare such claim), would not prevent the liability in tort to have accrued or arisen on October 21, 1949, on behalf of the Bowlers, because at such subsequent date, October 25, 1949, such third-party claim was thus executed, served and filed.

In other words, the damages resulting from the alleged wrongful conversion were not waived, nor was the actual conversion stayed, from the date on October 21, 1949 until the third-party claim was filed and served on October 25, 1949, awaiting such third-party claim, for the reason that such conversion and any damages which legally may have resulted was, in our view, clearly wrongful and tortious, and has continued to be so. It did not require the third-party claim to establish it in the first instance, but upon being subsequently established by competent evidence and a valid judgment, such tortious cause of action that had already existed, would continue to exist until such an action had been filed and proved, and judgment granted or dismissed, or had become barred by the statute of limitations, under sec.

8708.01, N.C.L.Supp., vol. 2, and sufficient sureties justified and the bond approved. If judgment in favor of petitioners had been adjudged, under such third-party claim statute, doubtless such damages, liability, fees, costs and counsel fees as would otherwise have been properly applicable, would have been superseded by the accrual of such damages as would doubtless have been adjudged under the third-party claim statute.

■ But the plaintiff, Stella B. Leonard, formerly known as Stella B. Leonard Belanger, in case No. 4110, failed as to said third-party claim, to provide for such bond and Sheriff Vannoy entirely disregarded making any demand upon the plaintiff "to give the sheriff an undertaking executed by at least two good and sufficient sureties in a sum equal to double the value of the property levied on." Such quotation is sec. 8708.01, N.C.L. Supp., vol. 2, above mentioned.

Consequently, the bond or undertaking not having been given by the plaintiff, Mrs. Leonard, to the sheriff, and she having failed to do so, the sheriff, in accordance with such third-party claim, and pursuant to said statute, sec. 8708.01, N.C.L.Supp., vol. 2, was required to release said property to Milton A. Bowler and Milton D. Bowler.

■ In the first paragraph of said third-party claim statute, same being sec. 8708.01, containing the words, "fails within five days after written demand to give the sheriff an undertaking," etc., the provision as to the term "written demand" relates to such a written demand by the sheriff. In the similar statute in California, which is almost verbatim as the same language in our said statute, the provision referred to as to "written demand" is construed to mean, that such demand upon the plaintiff may be made by the sheriff as a matter of his protection, but the sheriff is not required to demand such bond. In any event, "if the plaintiff, or the person in whose favor the writ of attachment runs, fails within five days after written demand to give the sheriff an undertaking * * *"—it is manifest that if the provision

were construed to be otherwise, the sheriff could make abortive or impossible "the third party claim" requirement compelling the release of the property wrongfully taken from the third party claimant, if the execution or attachment plaintiff "has failed within five days to give such bond or undertaking." That is made clear in Duncan v. Superior Court of California, 104 Cal.App. 218, in which, on page 221, 285 P. 732, on page 734, Sturtevant, J., stated: "Where property has been levied on it is clear that the third party claimant may make an attempt to have it released and that such attempt may be fully made and (unless the plaintiff gives the undertaking specified in paragraph 1) effectually accomplished within a period of five days after the levy. *Nothing but the execution of the said undertaking will stay the sheriff's hand.* If the plaintiff gives the undertaking provided for in paragraph 1, and if he also petitions for a hearing as provided for in paragraph 5, important questions as to the legal effect of the hearing will arise which should not be passed on till they have been duly presented in a proper case. If he does not give the undertaking the statute contains no provisions that the sheriff's hand will be stayed, nor that he may later retake the property, nor that the court may impound the property until a petition has been heard, nor that thereafter the court can make any order looking toward the retaking of the property." (Italics ours.)

The provision involved in this proceeding in No. 3598, in relation to the third party claim statute in Nevada, is sec. 8708.01, N.C.L.Supp., vol. 2, to which reference has been above made, and the particular paragraph therein is sec. 210½. The identical provision in California is paragraph 1 of sec. 689 of the Code of Civil Procedure, as amended in 1929.

The only difference is that in said paragraph 1 in the California Code provision, the reference is to "writ of execution," whereas, the same paragraph in Nevada is sec. 210½, and the reference is to "writ of attachment."

But the terms "writ of execution" and "writ of attachment" are interchangeable under our Civil Practice Act in Nevada as to the identical provisions in question.

As above indicated, the plaintiff in No. 4110, not having furnished a bond or undertaking to the sheriff under such third-party claim statute, sec. 8708.01, N.C.L. Supp., vol. 2, and it appearing from the evidence and the law involved in this proceeding No. 3598 that the cattle above mentioned were wrongfully taken and removed from the Bowler Ranch, and it having been determined by us that such third-party claim statute, sec. 8708.01, is valid and effective, and sufficiently supported by ample authority, and that, pursuant to the said statute, no bond having been furnished by the plaintiff in compliance with such third party claim, executed and served, as aforesaid, on October 25, it follows that said forty-one head of dairy cattle and one Holstein bull, unlawfully taken and removed from the possession of the said Bowler Ranch and premises, *should have been released immediately* after such failure to furnish such said undertaking to the said sheriff, and that, in view of the facts and the law applicable, *must be returned to the petitioners,* Milton A. Bowler and Milton D. Bowler, to the said Bowler Ranch premises, without delay. It follows further that, commencing October 21, 1949, and continuing until ordered by this court, the said cattle and each and all thereof, have been converted, wrongfully, by the respondent, Ralph J. Vannoy, sheriff, of Churchill County, Nevada, to his own use, and to that of the plaintiff, Stella B. Leonard, formerly known as Stella B. Leonard Belanger.

 The fact that the said Stella B. Leonard was advised by her attorney, John S. Sinai, Esq., his assistant Mr. Coleman, and perhaps others, to cause said cattle to be thus removed from the petitioners and their Bowler Ranch and premises, and to deliver them to the plaintiff and to any such premises and location within the said county of Churchill, Nevada, or elsewhere within the State of Nevada, by reason of the fact as it has been

alleged, the said cattle were taken and removed therefrom prior to such third-party claim having been filed, October 25, 1949, and that plaintiff was thus absolved from the operation and effect of the said third-party claim statute above mentioned, and that the same was ineffective, and that neither the said sheriff, nor the plaintiff was required to release and return said cattle to the Bowlers and their premises, is untenable. It is clearly found that they were thus converted, and continued to be so converted, since October 21, 1949, and thereafter, unlawfully and wrongfully. Such action, therefore, taken by the said Ralph J. Vannoy, sheriff, was unlawful and totally void and of no effect.

The same may be said, equally, by reason of the fact that a so-called Return upon such writ of execution, filed October 21, 1949, was returned, November 22, 1949. Such act and conduct on the part of said sheriff, could not be converted into any rightful or valid action as against the Bowlers, as no action could have been lawfully taken as to their said property, nor such cattle removed from their premises against their will and without their consent, for the reasons fully above shown and set forth. They were deprived of any and all notice, and the right to be heard, and such action on the part of the sheriff was unlawful, wrongful and arbitrary, and without due process.

Consequently, it necessarily follows that said cattle were thus unlawfully and wrongfully converted by the said sheriff and regardless of the location or physical premises within the said county of Churchill, and to which they were removed, or where they may be found, and that they were on October 21, 1949, and continuously have been and now are entirely the possessory property of the petitioners, and that the said sheriff, Ralph J. Vannoy, has, commencing on the said 21st day of October, 1949, and until the present date, been in the *constructive possession* of the said cattle.

In that connection see 21 Am.Jur., sec. 502, p. 249, citing the following: Chadbourne v. Summer, 16 N.H.

129, 41 Am.Dec. 720; Phillips v. Elwell, 14 Ohio St. 240, 84 Am.Dec. 373; Evans v. Matson, 51 Pa. 366, 88 Am.Dec. 584.

Finally, we must consider whether or not mandamus is appropriate in the instant proceeding, and whether or not the alternative writ should be dismissed, or that same may be made permanent.

Our statute as to mandamus, chap. 73, N.C.L., vol. 4, sec. 9243, provides: "§ 754. This writ shall be issued in all cases where there is not a plain, speedy, and adequate remedy in the ordinary course of law."

In view of the existing situation in the instant proceeding, and the facts and circumstances, as they now reasonably appear, it appears reasonable to conclude that without this writ providing a plain, speedy, and adequate remedy, such other remedies in the ordinary course of law would seem unavailing.

If the Bowlers, instead of seeking this extraordinary writ, had proceeded by a claim and delivery action, similar to replevin, expensive and prolonged litigation would probably have resulted, and upon prevailing, their dairy business would, at the best, have been then or would thereafter have become very largely crippled, if not destroyed. If it were assumed that damages would prove sufficient, even in that instance, we must be able reasonably to assume that by such damages, through petitioners' action, they could feasibly commence again to restore or rehabilitate their undertaking, which, however, might prove highly uncertain. And coupled with that situation, suppose, the damages hoped for should not be recoverable because of insolvency or other inability on the part of the plaintiff, provided the Bowlers succeeded in establishing such judgment. It appears that mandamus is the proper remedy under the circumstances. It is contended that, inasmuch as the honorable district judge in the First judicial district court, in and for the county of Churchill, decided to dismiss a petition for writ of mandate in a similar former proceeding in that court, the petitioners are precluded in this court

from so doing by virtue of the principle of res adjudi-cata. We do not so decide. The former decisions of this court, which we should follow unless plainly errone-ous, have clearly pointed out some phases of the ques-tions at issue. In the case of State ex rel. Sugarman v. Lamb, 37 Nev. 19, 138 P. 907, 910, referring to the principal question, it is, in effect, stated that, in the absence of a good and sufficient bond, the property should be redelivered and returned to the party from whom taken. In that case, it made little difference whether or not the parties originally proceeded in a claim and deliv-ery action, or without any former action, by one a stranger to the proceeding, so far as the point now involved is concerned. Mandamus was held the appro-priate remedy and that the property which had wrong-fully been taken, because no sufficient undertaking had been furnished, must be retaken, redelivered and returned to the party from whom it had been wrong-fully taken. In the opinion in that case, supra, Mr. Justice McCarran stated, as follows:

"In an action for claim and delivery after the officer has taken possession of the property, and between that time and the time it is delivered to either of the parties to the action, the property is in custody of law. The wrongful delivery of the property to either party to the action does not relieve it from this rule. The sheriff, in an action of this kind is charged under the law with the duty of ultimately delivering the property to one of the parties to the litigation. Welter v. Jacobson, 7 N.D. 32, 73 N.W. 65, 66 Am.St.Rep. 632. * * * It fol-lows, where the record discloses that the property, although wrongfully put out of the hands of the sheriff, is still within the county, the sheriff may, and it is his duty, to retake the property.

"Where, in an action in claim and delivery, the prop-erty is seized by a sheriff and afterwards released to the defendant upon a forthcoming bond, it is still in the custody of the court in which the action was instituted, and remains in the custody of that court to abide the

result of the replevin suit. 34 Cyc. p. 1381. In this case, the sheriff having erroneously released the property to the defendant, after that property was taken by him as an officer of the court, it is still in contemplation of the law in his control and possession.

"It is manifest from the record in this case that defendant, in the action in claim and delivery, failed to comply with the terms of the statute in that no notice was given to the plaintiff, and the sureties on the undertaking of defendant did not justify, as prescribed by section 188 of the civil practice act. In fact, on the part of the defendant, there was no compliance with the statute. It was therefore the duty of the sheriff, upon receipt of his lawful fees for taking and the necessary expenses for keeping, to deliver the property to the plaintiff."

And in State v. Lamb, supra, the question of whether an alternative writ of mandamus, having in another court, been dismissed and another such writ having been instituted in this court, has become res judicata, is treated as follows: "(2) This matter having been presented to the court below by affidavit and application for a writ of mandamus commanding the sheriff to deliver the property to the plaintiff, and that court having refused to issue the writ, it is our judgment that the petitioner has exhausted his remedies in the district court and is entitled to have the matter heard and determined by this court. State, ex rel. Johnson v. Collins, supra [41 Mont. 526, 110 P. 526]."

In the case of State ex rel. Keane v. Murphy, 19 Nev. p. 89, it is stated on page 95, 6 P. 840 on page 843 (also referred to in the case of State ex rel. Sears v. Wright, 10 Nev. 167, 175) as follows: " 'The mere fact that an action or proceeding will lie does not necessarily supersede the remedy by mandamus. The relator must not only have a specific, adequate, and legal remedy, but it must be one competent to afford relief upon the very subject-matter of his application; and if it be doubtful

whether such action or proceeding will afford him a complete remedy, the writ should issue.' [State ex rel. Sears v. Wright], 10 Nev. [167], 175; and see Babcock v. Goodrich, 47 Cal. 488."

 Digressing for the moment, and referring to the fact that there is a possibility, or even probability, that the petitioners may feel constrained to seek damages because of the alleged wrongful action of the respondent sheriff, Ralph J. Vannoy, in the premises, and concerning which petitioners in the prayer of their petition have sought the remedy of damages, it is true that, under certain circumstances, damages are recoverable upon proceedings being had in mandamus. This court in Nevada, under the statute as to a mandamus proceeding in N.C.L., vol. 4, sec. 9247, has stated the following: "§ 9247. When Answer Raises Question Of Fact.—Question Tried Before Jury. § 758. If an answer is made, which raises a question as to matter of fact essential to the determination of the motion, and affecting the substantial rights of the parties, and upon the supposed truth of the allegation of which the application for a writ is based, the court may, in its discretion, order the question to be tried before a jury, and postpone the argument until such trial can be had and the verdict certified to the court. The question to be tried shall be distinctly stated in the order for trial, and the county shall be designated in which the same shall be had. The order may also direct the jury to assess any damages which the applicant may have sustained, in case they find for him."

Similar provisions prevail in many other states. But it has not been our practice in this court to provide for the hearing of controversial matters of fact in the supreme court, necessitating the hearing and trial of witnesses, production and determination of evidence, etc., which would convert our procedure into that of a trial court, instead of the appellate court of last resort, and so confuse the functions of the two courts that, in

our view, a clear line of demarcation would by such confusion, overreaching and overlapping, largely undermine the traditional characteristics and the complexion of those tribunals. At least, we have in the past carefully observed such demarcation. It is our view, therefore, that instead of an attempt to resort to recovery of damages in this mandamus proceeding in this court that such action, suit or proceeding may be instituted and proceeded with in some other court or tribunal as may be appropriate.

■■■ In regard to the question of the title of the personal property, namely, the cattle involved as between Stella B. Leonard on the one hand, and the Bowlers on the other, it does not appear necessary, even to suggest that this proceeding by writ of mandate is *only for the purpose of restoring the status quo,* that is to say, that, because, in view of the facts and the legal rights and principals applicable, the dairy cattle should not have been taken from the Bowlers and the Bowlers have been deprived of their possession by the sheriff, Ralph J. Vannoy, without due legal process, and that their possession must be returned from whence they came, and placed, in legal contemplation, in such position or situation as that in which they were before the sheriff unlawfully converted them. Hence, it is proper to state, we believe, that it is not our duty or province to indicate such matters as to actual ownership, or title, or the lack of it, as may appear, nor matters as to which heretofore certain parties have acted rightfully, or wrongfully, honestly or fraudulently. Either or both parties, without even any suggestion here, are free, of course, to resort to claim and delivery, proceedings by supplementary execution, perhaps by third party claim, or any other suitable action, suit or proceeding, as they may properly conclude that may be expedient and appropriate. In the instant proceeding, the premises based upon the facts and the law having been duly considered, it is hereby ordered that the certain forty-one (41) head of dairy cattle and one (1) Holstein bull, as aforesaid, and

which were unlawfully and wrongfully, on the 21st day of October, 1949, by Ralph J. Vannoy, sheriff of the county of Churchill, State of Nevada, taken and removed from the possession of Milton A. Bowler and Milton D. Bowler and from the premises known as the Bowler Ranch in the said county of Churchill, and which, without right or authority, were converted by the said Ralph J. Vannoy, said sheriff, to his own use, benefit and to the use, purposes and benefit of Stella B. Leonard, formerly known as Stella B. Leonard Belanger, and perhaps to others, in which, nevertheless, Ralph J. Vannoy, said sheriff, was, and still is, constructively in possession of said dairy cattle and one Holstein bull, and that such dairy cattle and each and every head thereof have constructively remained, and continue to remain, shall be immediately and forthwith returned by the said Ralph J. Vannoy from wherever said dairy cattle and each and every head thereof physically may be, whether at one location or place, or several places or locations within the said county of Churchill, State of Nevada, regardless of the presence of any other person or persons who may be physically in charge of said cattle, but as to whom all such persons shall be deemed to be the agents of the said Ralph J. Vannoy, sheriff, and that the said Ralph J. Vannoy, sheriff, being in the constructive possession thereof, upon thus returning said cattle, shall take, convey and conduct the same, or cause them to be taken, conveyed and conducted to Milton A. Bowler and Milton D. Bowler, and to their premises known as the said Bowler Ranch, and then and there to redeliver said cattle, and each and every head thereof, thereby placing said cattle fully in the possession of said Milton A. Bowler and Milton D. Bowler, and thereby reestablishing the status quo.

It is hereby ordered that the said Ralph J. Vannoy as such sheriff, and individually, shall be fully and completely responsible for the carrying out of said writ of mandamus without undue delay and with due and prompt diligence.

And it is further hereby ordered that said alternative writ be and hereby is made permanent.

EATHER, J., concurs.

BADT, J.

I concur reluctantly in the order granting the writ of mandamus (1) because I fear that the asserted inadequacy of legal remedies works both ways in this case; (2) because I am not convinced that the execution issued in Stella B. Leonard Belanger v. Belanger, Childers and Vrenon, following the form of the judgment in that case, ordering the immediate delivery of the livestock to the plaintiff is within the contemplation of the third-party claim statute (though no authorities pointing out the distinction have been presented) ; (3) because the granting of the writ of mandamus which in effect orders the sheriff to take the cattle from the possession of Mrs. Leonard and deliver the same to the Bowlers, in a proceeding to which Mrs. Leonard is not a party, is subject to the same criticism as the action of the sheriff which we condemn, namely, his taking of the cattle from the possession of the Bowlers by virtue of a writ pursuant to a judgment in an action to which the Bowlers were not parties; (4) because our opinion and judgment in this proceeding can determine nothing as to the conflicting claims of the parties and because such conflicting claims have not yet been determined; and (5) because, in view of the fact that title to the cattle was adjudicated to be in Mrs. Leonard in two prior actions (the first against her husband and the second against him, Childers and Vrenon), I am in doubt but that an earlier status quo should be contemplated than the status at the time of the sheriff's seizure of the cattle. However, despite these doubts, I do not feel free to dissent in view of the holding of this court in State ex rel. Sugarman v. Lamb, Sheriff, 37 Nev. 19, 138 P. 907, in which this court by mandamus commanded the sheriff to return to the plaintiff in replevin property which the sheriff had theretofore returned to the defendant, because the latter had

failed to comply with statutory requirements to obtain such return. Conceding the distinction between a sheriff's duties under replevin and his duties under execution of a judgment such as the one here involved, the analogy and reasoning of this court in that case, as well as the other authorities cited in the opinion of the chief justice are sufficient to preclude my dissent.

ON PETITION FOR ORDER REOPENING CASE FOR SUBMISSION OF EVIDENCE AND FURTHER ARGUMENT AND REHEARING.

March 27, 1950. 216 P.2d 274.

**Petition denied.**

*Morley Griswold* and *George L. Vargas,* both of Reno, for Petitioners.

*John S. Sinai,* of Reno, and *Andrew L. Haight,* of Fallon, for Respondent.

By the Court, HORSEY, C. J.:

Respondent has filed a 75-page "Petition for Order Reopening Case for Submission of Evidence and Further Argument and Rehearing" in which the court is severely taken to task for (1) determining adverse claims to title (2) in a mandamus proceeding (3) on an incomplete record (4) without opportunity to respondent to produce proofs and (5) in a misconception of such evidence as was adduced. The conclusions reached by us in our former opinion may be condensed to this. Respondent sheriff, armed with a writ against Vrenon, ordering respondent to deliver certain livestock to Mrs. Leonard, found the cattle in the possession of the Bowlers, who were not parties to the writ or to the action, and who *claimed* title and right of possession. It was the sheriff's clear mandatory duty, in the absence of any process directed against the Bowlers, in the first place to respect their claim of title and claim of right to possession, and in the second place to honor their third-party claim

in default of Mrs. Leonard's bonding against it and in the absence of proceedings under the third-party claim statute. Such is still our conclusion. Our issuance of the peremptory writ terminated this proceeding. See 35 Am.Jur. 124, Mandamus, sec. 386. The petition is denied.

BADT and EATHER, JJ., concur.